**Dr. Morgan SILVER, on his own behalf and on behalf of all other similarly situated podiatrists in the State of Alabama, Plaintiff-Appellee,**

v.

**Faye BAGGIANO, Commissioner of the Department of Medicaid, State of Alabama, Defendant-Appellant.**

No. 85–7402.

United States Court of Appeals, Eleventh Circuit.

Nov. 24, 1986.

**1212**

Henry C. Barnett, Jr., Capell, Howard, Knabe & Cobbs, Montgomery, Ala., for defendant-appellant.

Copeland, Franco, Screws & Gill, E. Terry Brown, Montgomery, Ala., for plaintiff-appellee.

Before TJOFLAT and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

CORRECTED OPINION

ANDERSON, Circuit Judge:

In this action, the plaintiff seeks to have the federal courts determine whether the Commissioner of the Alabama Medicaid Agency has violated state or federal law by denying Medicaid reimbursement to podiatrists for podiatric services while at the same time reimbursing medical doctors for the identical podiatric services. Because the plaintiff cannot bring his claims in federal court, we must vacate the judgment of the district court. However, we remand to the district court to consider a Medicaid recipient's motion to intervene in the action.

I. FACTS AND PROCEEDINGS

The plaintiff, Dr. Morgan Silver, is a podiatrist licensed to practice in the state of Alabama. In Alabama, podiatrists are permitted to treat the human foot to the same extent as medical doctors can. Suing

both individually and on the behalf of all other similarly situated podiatrists, Silver alleged that defendant Baggiano, Commissioner of the Alabama Medicaid Agency, and Attorney General Charles Graddick had established, in violation of federal and state law, a policy of denying Medicaid reimbursements to licensed podiatrists while at the same time reimbursing medical doctors for podiatric services. Silver's complaint sought a declaratory ruling that podiatrists are entitled to participate in Alabama's Medicaid program and injunctive relief directing the Alabama Medicaid Agency to reimburse podiatrists for podiatric services in the same manner as physicians are reimbursed under the state Medicaid plan.

Dr. Silver originally filed this action in the Circuit Court for Montgomery County, Alabama. The defendants removed the case from Alabama state court to the United States District Court for the Middle District of Alabama. The Attorney General was dismissed from the case, leaving Commissioner Baggiano as the only remaining defendant. On cross-motions for summary judgment,[1] the district court found that Baggiano had not violated a state statute, but was in violation of the federal statute. Therefore, the district judge granted the relief which Silver sought. This appeal followed. We first discuss the state law claims, then the federal claims, and finally a motion to intervene which the district court did not rule upon.

## II. STATE LAW CLAIMS

■ Silver contends that the policy of the Alabama Medicaid Agency not to reimburse podiatrists violates the laws and constitution of the state of Alabama. The district court ruled that the policy was not violative of Ala.Code § 27–1–15. It did not consider Silver's claims based on the Alabama Constitution.

On appeal, Baggiano argues that Silver cannot bring his claims based on the Alabama Constitution or statutes in federal court. Baggiano did not present the Eleventh Amendment issue to the district court nor did the district court consider this issue. However, since this is a jurisdictional issue, we must rule on it.

The Eleventh Amendment bars suits in federal court against a state by its own citizens as well as by citizens of other states. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). "A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984) (*"Pennhurst II"*). "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id.* "[T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Id.*

In the instant case, Silver has charged the Commissioner of the Alabama Medicaid Agency with violating the state constitution and at least one state statute, and he has asserted that the federal courts have pendent jurisdiction over these claims. On its face, each of these claims appears to be precisely the type of claim barred by *Pennhurst II.* However, Silver advances three arguments that his state claims are not barred by the Eleventh Amendment.

Silver states that Alabama is not the "real party in interest." He contends that Baggiano has not "shown ... any effect upon the State itself, and ... she cannot." Supp.Brief of Appellee at 8. Thus, Silver is arguing that the "'general rule ... that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter,'" *Pennhurst II,* 465 U.S. at 101, 104 S.Ct. at 908 (citation omitted), is not applicable.

"'The general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the

1. A motion for class certification had been made but was not ruled on by the district court.

public administration," or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act." ' " *Id.* at 101, 104 S.Ct. at 908–09 n. 11 (quoting *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)) (citations omitted). A declaratory judgment or injunction against Baggiano would clearly compel the government of Alabama to act, i.e., to reimburse podiatrists, and "expend itself on the public treasury" since the money to reimburse podiatrists would in some part come from the Alabama treasury. Thus, although the claims are nominally brought against Baggiano, Alabama is the real, substantial party in interest.

Silver also contends that Baggiano was acting *ultra vires* her authority and that the suit should not be considered to be against Alabama for the purposes of the Eleventh Amendment. However, in *Pennhurst II,* the Supreme Court pointed out that recent cases have made "clear that a state officer may be said to act *ultra vires* only when he acts 'without any authority whatever.' " *Id.* (citations omitted). "[A]n *ultra vires* claim rests on 'the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient.' " *Id.* (citation omitted). The Supreme Court specifically rejected any broader interpretation of the *ultra vires* doctrine. *Id.* at 105–18, 104 S.Ct. at 911–17. Under the *Pennhurst II* standard, Commissioner Baggiano was clearly acting within the scope of her authority in deciding not to reimburse podiatrists.

Finally, citing *Barnes v. Cohen*, 749 F.2d 1009 (3d Cir.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985), Silver argues that the Third Circuit has recognized an exception to *Pennhurst II* which is applicable in this case and which this court should adopt. In *Barnes,* the Third Circuit found that state officials were not adhering to their own regulations regarding their Aid to Families with Dependent Children ("AFDC") program. As a result, the court found that the state officials were violating the state AFDC plan. Moreover, since the federal AFDC statute requires that state AFDC plans "be

in effect in all political subdivisions of the State, and if administered by them, be mandatory upon them," 42 U.S.C. § 602(a)(1), the Third Circuit held that state officials, by not adhering to their own regulations, had violated the state plan and thus had violated the federal law which makes the state plan mandatory. Therefore, because state officials were alleged to have violated federal law by not complying with state law, the Third Circuit decided that *Pennhurst II* was inapplicable. *Id.* at 1019.

Assuming *arguendo* that *Pennhurst II* is not applicable to a case such as that described in *Barnes v. Cohen,* we hold that we are not faced with such a situation. Silver has not alleged that Baggiano has violated the state Medicaid plan or regulations promulgated pursuant to the state Medicaid plan. Instead he argues that Baggiano has not complied with the state constitution and with state statutes which are not part of the Medicaid plan. Thus, the principles announced in *Barnes* are not relevant here.

■ It might be argued that the Eleventh Amendment immunity was waived by the removal of this case from state court to federal court. However, a waiver of Eleventh Amendment immunity by state officials must be explicitly authorized by the state "in its Constitution, statutes and decisions." *Ford Motor Co. v. Department of Transportation*, 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945). Thus, removal by state officials of a suit containing state law claims to federal court does not amount to waiver of Eleventh Amendment immunity unless those state officials are authorized to waive such immunity. *Gwinn Area Community Schools v. State of Michigan*, 741 F.2d 840, 846–47 (6th Cir.1984); *David Nursing Home v. Michigan Department of Social Services*, 579 F.Supp. 285, 287–88 (E.D.Mich.1984). Silver has conceded that neither Baggiano nor Attorney General Graddick could waive Alabama's Eleventh Amendment immunity. Supp.Brief of Appellee at 12. *See Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057,

57 L.Ed.2d 1114 (1978). Thus, there has been no waiver of Alabama's Eleventh Amendment sovereign immunity.

In summary, the district court was barred by the Eleventh Amendment from entertaining the claims against Baggiano based on violations of the Alabama Constitution and the Alabama statute. The decision of the district court regarding Baggiano's alleged violation of Ala.Code § 27–1–15 must be vacated. Silver's claims against Baggiano for alleged violations of this or any other independent state statute and for alleged violations of the Alabama Constitution must be remanded to the state court from which this case was removed. *See Gwinn Area Community Schools v. State of Michigan,* 741 F.2d at 847; *David Nursing Home v. Michigan Department of Social Services,* 579 F.Supp. at 285.

### III. CLAIMS UNDER FEDERAL LAW

#### A. *Statutory Claims*

Medicaid is a cooperative venture of the state and federal governments. A state which chooses to participate in Medicaid submits a state plan for the funding of medical services for the needy which is approved by the federal government. The federal government then subsidizes a certain portion of the financial obligations which the state has agreed to bear. A state participating in Medicaid must comply with the applicable statute, Title XIX of the Social Security Act of 1965, as amended, 42 U.S.C. § 1396, *et seq.,* and the applicable regulations.

■ The district court held that Silver was entitled to relief under 42 U.S.C. § 1396a(a)(23). That section provides in relevant part:

A State plan for medical assistance must—

. . . .

(23) . . . provide that any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services.

42 U.S.C. § 1396a(a)(23). The above-quoted provision is sometimes referred to as the "freedom of choice" provision. The district court ruled that Silver was qualified to perform podiatric services and that by "adopting a policy that systematically refuses to compensate podiatrists for those services that they are licensed to provide while simultaneously compensating physicians for these same podiatry services, Defendant Commissioner has violated the aforestated freedom of choice provision." Record on Appeal at 134.

However, the district court failed to recognize that the Supreme Court in *Maine v. Thiboutot,* 448 U.S. 1, 6, 100 S.Ct. 2502, 2505, 65 L.Ed.2d 555 (1980), has held that the Social Security Act affords no private right of action. *See also Edelman v. Jordan,* 415 U.S. 651, 674–75, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974); *id.* at 690, 94 S.Ct. at 1369 (Marshall, J., dissenting). Thus, Silver had no express or implied right of action under the Social Security Act to challenge Alabama's policy.

■ Even though there is no express or implied cause of action under the Social Security Act, Silver's complaint could be deemed an action under 42 U.S.C. § 1983. Supreme Court precedent establishes that, subject to certain exceptions discussed below, violations of the Social Security Act can be remedied in a § 1983 action. In *Maine v. Thiboutot,* 448 U.S. at 4–6, 100 S.Ct. at 2504–05, the Court construed § 1983 as authorizing suits to redress violations by state officials of rights created by federal statutes. *Accord Middlesex County Sewerage Authority v. National Sea Clammers,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625–26, 69 L.Ed.2d 435 (1981) (*"Sea Clammers"*). Section 1983 is the exclusive statutory cause of action available to a plaintiff seeking compliance with the Social Security Act on the part of a participating state. *Thiboutot,* 448 U.S. at 5–6, 100 S.Ct. at

2504–05; *see also Taylor v. St. Clair*, 685 F.2d 982, 988 (5th Cir.1982).

"The Court, however, has recognized two exceptions to the application of § 1983 to statutory violations." *Sea Clammers*, 453 U.S. at 19, 101 S.Ct. at 2626. First, if Congress has foreclosed private enforcement of the statute in question in the enactment of the statute itself, then § 1983 is unavailable to enforce federal rights under that statute. *Sea Clammers*, 453 U.S. at 19, 101 S.Ct. at 2625–26; *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981) (*"Pennhurst I"*). For example, "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Sea Clammers*, 453 U.S. at 20, 101 S.Ct. at 2626. Second, if Congress has not created enforceable rights in the relevant statutory provision, there is no cause of action available under § 1983. *Sea Clammers*, 453 U.S. at 19, 101 S.Ct. at 2625–26; *Pennhurst I*, 451 U.S. at 28, 101 S.Ct. at 2630. By its terms, § 1983 does not create substantive rights;[2] it provides a remedy against state officials for deprivations of rights established elsewhere under federal law. *See, e.g., Wilson v. Garcia*, 471 U.S. 261, 278, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985).

■ If there were no exceptions to the *Maine v. Thiboutot* rule that § 1983 may be used to redress violations by state officials of federal statutes, we would deem

Silver's claim to have been brought under § 1983 and consider the merits. However, with regard to the second exception to enforcement of federal statutory rights through § 1983, Baggiano argues that § 1396a(a)(23) does not create rights enforceable by health care providers.

For purposes of this analysis, it is clear that the statute in question must create rights enforceable by the plaintiff in the case at hand—not rights enforceable by *some* potential plaintiff. *See, e.g., Alexander v. Polk*, 750 F.2d 250, 259 (3d Cir.1984) ("It is clear that 7 C.F.R. § 246.24 (1978) created an enforceable right on behalf of WIC recipients to be informed of the availability of fair hearings."); *Boatowners & Tenants Ass'n v. Port of Seattle*, 716 F.2d 669, 673–74 (9th Cir.1983) ("There is no evidence whatsoever of an intent to provide [in the River and Harbor Improvements Act] economical moorage or to create any special benefit for the class of pleasure craft owners [who have brought this suit]."); and *Perry v. Housing Authority of City of Charleston*, 664 F.2d 1210, 1217 (4th Cir.1981) ("The plaintiffs have not pointed to any substantive provisions of the various housing acts [the United States Housing Act of 1937, the Housing Act of 1949, and the Housing and Urban Development Act of 1968] which give them a tangible right, privilege, or immunity.").

As with the Medicaid statute as a whole,[3] § 1396a(a)(23) was intended to benefit Medicaid recipients. Baggiano argues that there is no indication that it creates rights

**2.** Section 1983 provides in relevant part that: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983.

**3.** Congress authorized the appropriation of funds for Medicaid "[f]or the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance ... and (2) rehabilitation and other

services [to the needy]." 42 U.S.C. § 1396. The health care practitioner "is not the intended beneficiary of the Medicaid program. Instead, the purpose underlying the funding program is to extend financial benefits to the patients eligible to receive their care at government expense." *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 265 (10th Cir.), *cert. denied*, 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981); *see also, Green v. Cashman*, 605 F.2d 945, 946 (6th Cir. 1979) ("We do not find in the statute authorizing ... Medicaid any legislative intention to provide financial assistance to providers of care for their own benefit. Rather, the statute is designed to aid the patients and clients of such facilities.").

enforceable by health care providers. First, the language of this provision is clearly drawn to give Medicaid recipients the right to receive care from the Medicaid provider of their choice, rather than the government's choice. However, there is no indication in the language that health care practitioners are given any rights by this provision.

Second, the legislative history is relevant in determining whether or not health care providers are given enforceable rights with respect to the freedom of choice provision. The Senate Report on the Act of Jan. 2, 1968, Pub.L. 90–248, pursuant to which the freedom of choice provision became part of the statute, stated that "the bill would— ... (4) Allow recipients free choice of quali-- fied providers of health services." S.Rep. No. 744, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Ad. News 2834, 2838 ("USCCAN"). Later, the Senate Report stated that the new subsection would provide that "people covered under the medicaid program would have free choice of qualified medical facilities and practitioners." *Id., reprinted in* 1967 USCCAN at 2868. The Senate Report also stated:

(i) Free choice of medical services

Under the current provisions of law, there is no requirement on the States that recipients of medical assistance under a State title XIX program shall have freedom in their choice of medical institution or medical practitioner. In order to provide this freedom, a new provision is included in the law to require the States to offer this choice.... Under this provision, an individual is to have a choice from among qualified providers of service. Inasmuch as States may, under title XIX, set certain standards for the provision of care, and may establish rates for payment, it is possible that some providers of service may still not be willing or considered qualified to provide the services included in the State plan.

*Id., reprinted in* 1967 USCCAN at 3021. Baggiano argues that the legislative history unambiguously indicates that the provi-

sion was intended to benefit Medicaid recipients, and that there is no suggestion that health care providers were intended beneficiaries.

Finally, the Supreme Court has stated that § 1396a(a)(23) creates rights in Medicaid recipients:

Title 42 U.S.C. § 1396a(a)(23) ... gives recipients the right to choose among a range of *qualified* providers, without government interference. By implication, it also confers an absolute right to be free from government interference with the choice to remain in a [nursing] home that continues to be qualified.

*O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 785, 100 S.Ct. 2467, 2475, 65 L.Ed.2d 506 (1980) (emphasis in original). Thus, although it is clear that recipients have enforceable rights under § 1396a(a)(23), Baggiano argues that there is no indication in the language of the statute, the legislative history, or the Supreme Court's interpretation of this provision that Congress intended to create rights enforceable by health care providers.

On the other hand, although the Medicaid statute as a whole was enacted for the benefit of the recipients, Silver argues that Medicaid providers have been allowed to bring § 1983 actions under other subsections for adjustments of the states' methods of reimbursement. *See, e.g., Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 385 (5th Cir.1980); *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 388 (5th Cir.1980); *Nebraska Health Care Ass'n v. Dunning*, 778 F.2d 1291, 1296 (8th Cir. 1985); *Yapalater v. Bates*, 494 F.Supp. 1349, 1356–59 (S.D.N.Y.1980), *aff'd*, 644 F.2d 131 (2d Cir.1981), *cert. denied*, 455 U.S. 908, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982).

For several reasons we decline at this time to resolve the issue of whether this provision of the Social Security Act creates a right enforceable by Silver. There is no precedent in this circuit or in any other circuit on this question. Since the issue was not presented to the district court, we are without the benefit of that court's con-

sideration of the question. Finally, as discussed above, Medicaid recipients do have enforceable rights under § 1396a(a)(23), and an actual recipient has made a motion to intervene in this case. *See* Section IV, *infra.* Therefore, on remand, the district court may not have to reach this issue. If the district court finds that the patient has a § 1983 cause of action and permits the intervention, a decision on the merits of the patient's statutory claim will moot the issue of jurisdiction over the identical claim brought by the podiatrist. If intervention is not allowed, the district court must consider this issue in the first instance.

In summary, because there is no express or implied cause of action under § 1396a(a)(23), the judgment of the district court with respect to Silver's federal statutory claim must be vacated. We express no opinion on the question of whether Silver may maintain an action under § 1983. This issue is remanded to the district court, although that court, too, may find it unnecessary to resolve the question in light of the motion to intervene.[4]

### B. *Constitutional Claims*

 Having decided that Silver was entitled to relief on his federal statutory claim, the district court did not address the federal constitutional claims. Since we have declined to determine whether or not Silver can bring an action to enforce the statute, his constitutional claims remain to be decided. Silver alleges that Alabama's policy of denying reimbursement to podiatrists while reimbursing medical doctors for podiatric services violates the equal protection and the substantive due process guarantees of the Fourteenth Amendment. Of course, such constitutional claims can be remedied in a § 1983 action. However, we conclude that Silver's constitutional claims are so clearly without merit that it would be futile to remand these claims for the district court to entertain them in the first instance. Thus the constitutional claims are dismissed.

"Social and economic legislation ... that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose." *Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981) (citations omitted). Similarly, in order to satisfy substantive due process requirements, the legislation must be rationally related to its purpose and must not be arbitrary or discriminatory. *United States v. Coastal States Crude Gathering Co.,* 643 F.2d 1125, 1127–28 (5th Cir. Unit A 1981), *cert. denied,* 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981).[5] Silver has not alleged that this policy involves any suspect classification or fundamental right. Without specifically stating its reason for this policy, Alabama has asserted that the decision not to reimburse podiatrists has a rational basis. "Where ... there are plausible reasons for [the legislature's] action, our inquiry is at an end. It is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision,' ... because [the Supreme Court] has never insisted that a legislative body articulate its reasons for enacting a statute." *United*

---

**4.** After oral argument, this court requested the parties to submit briefs on several jurisdictional issues. In addition to the issues discussed above, we asked the parties to consider whether, assuming a Medicaid recipient could bring an action under § 1983 to redress the violations of the Social Security Act alleged in this complaint, Dr. Silver would have standing to bring such an action on his patient's behalf. We decline to reach this question for two reasons. First, such a cause of action was not considered by the district court—Dr. Silver clearly brought suit "on his own behalf and on behalf of all similarly situated podiatrists in the State of Alabama." Second, the standing question is a difficult one

which we need not resolve because an actual recipient has made a motion to intervene. See Section IV, *infra.* Should the district court on remand deny the motion to intervene, then it may find it necessary to address whether or not Dr. Silver would have standing to bring an action on behalf of his patient.

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

*States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 178–79, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980) (citation omitted). In this case, there are several legitimate state interests to which this policy is rationally related. For example, this policy encourages patients to visit one health care provider for all of their examinations, diagnoses and treatments, rather than visiting a podiatrist for foot problems and a medical doctor for other problems. In addition, this policy might cut down administrative costs—monitoring and reimbursing multiple health care providers might require greater resources than monitoring and reimbursing physicians alone. Thus, Silver's constitutional claims are without merit and must be dismissed.

### IV. MOTION TO INTERVENE

 Before the district court's decision regarding the federal statutory issue became final, a patient eligible for Medicaid assistance who was being treated by a podiatrist without reimbursement by Medicaid filed a motion to intervene in the instant case. The district court did not rule on this motion. It was unnecessary for the district court to rule on this motion because it had already granted the relief under the Medicaid Act which the intervenor sought. In light of our disposition of this case, the motion is no longer moot. We remand this case to the district court in order to give the patient an opportunity to move the district court to rule on his motion to intervene. If the district court does not allow intervention, then it will be necessary for the district court to address whether or not the freedom of choice provision may be enforced by Dr. Silver, *supra* at 1217 and it may be necessary for the district court to address whether or not Dr. Silver has standing to assert the right of his patients to enforce that statute. *Supra* at n. 4. The movant may appeal any denial of the motion to intervene by filing a timely notice of appeal, and Dr. Silver and/or Baggiano may appeal from any adverse disposition of their claim by filing a timely notice of appeal.

If the district court permits the patient to intervene, it shall rule on the merits of the intervenor's federal statutory claim. The losing party shall have the opportunity to appeal the district court's order to us by filing a timely notice of appeal.

### V. CONCLUSION

Silver's claims based on state law may not be considered in federal court in light of the Eleventh Amendment, and the judgment of the district court with respect to the state claims is vacated, and the district court is instructed to remand those claims to the state court from which this action was removed. Silver's federal constitutional claims must also be dismissed since they lack merit. Finally, the judgment of the district court with respect to federal statutory claims asserted by Silver must be vacated for the reasons discussed above. However, the case is remanded to the district court for consideration of the patient's motion to intervene and, if same is granted, for consideration of the merits of the intervenor's federal statutory claim, or, if not granted, for consideration of Silver's claim under 42 U.S.C. § 1983.

Accordingly, the judgment of the district court is VACATED and the case is REMANDED with instructions.