**NUTRITIONAL SUPPORT SERVICES, L.P., and NSS Health Ltd., Plaintiffs,**

v.

**Zell B. MILLER, Governor of the State of Georgia, and Russell Toal, Commissioner, Department of Medical Assistance of the State of Georgia, Defendants.**

**Civ. No. 1:92–cv–395–JEC.**

United States District Court, N.D. Georgia, Atlanta Division.

June 30, 1993.

Jack C. Tranter, Piper & Marbury, Baltimore, MD, Michelle B. Rapoport, Rubin Winter & Rapoport, Atlanta, GA, John W. Jansak, Harriman Jansak Levy & Wylie, Nevett Steele, Jr., Office of Nevett Steele, Jr., Towson, MD, for plaintiffs.

William C. Joy, Mary Foil Russell, Office of State Atty. Gen., Atlanta, GA, for defendants.

### ORDER

CARNES, District Judge.

This case is presently before the Court on Plaintiff's Motion for Summary Judgment [30], Defendants' Motion for Summary Judgment [32], Plaintiffs' Motion for Hearing [40], and Plaintiffs' Motion to Extend Time for Discovery [41].

### BACKGROUND

Plaintiffs, Nutritional Support Services, L.P. ("NSS") and NSS Health, Ltd. ("NSS Health"), sell health care products to nursing home residents. (Compl. ¶ 8). Prior to June 1991, Plaintiffs were participating suppliers in the Georgia Medicaid program and received reimbursement for supplies sold to Georgia Medicaid recipients. In June 1991, however, Georgia implemented a new policy requiring that suppliers of durable medical supplies have a valid business license and an in-state business location or be located within a fifty mile radius of the state border. (*Id.* ¶¶ 11). Neither Plaintiff meets these requirements, as NSS is a limited partnership that has its principal place of business in Knoxville, Tennessee while NSS Health is a limited partnership organized under California law with its principal place of business in Pennsylvania. (*Id.* ¶¶ 1, 2). Since the new policy was implemented, both Plaintiffs have been barred from participating in the state Medicaid program and all claims that they have submitted for payment have been rejected. (*Id.* ¶ 14).

In February 1992, Plaintiffs filed a Complaint against the Governor and the Commissioner of the Department of Medical Assistance, alleging that the new policy violated: (1) the Social Security Act of 1965, as amended, 42 U.S.C. § 1396, *et seq.*, (2) the Equal Protection Clause, (3) the Privileges and Immunities Clause of Article IV, and (4) the Commerce Clause. At the same time they filed their Complaint, Plaintiffs moved for a Preliminary Injunction to prevent the State from enforcing the new policy. In June 1992, Plaintiffs moved to amend their Complaint and add a claim under 42 U.S.C. § 1983. By Order dated September 15, 1992, this Court granted Plaintiffs' Motion to Amend and denied their Motion for a Preliminary Injunction.

### DISCUSSION

A. *Summary Judgment*

1. *Statutory grounds*

Plaintiffs argue that the state's location requirement violates the "freedom of

choice provision" of the Social Security Act, codified as 42 U.S.C. § 1396a(a)(23).[1] As an initial matter, it is apparent that Plaintiffs cannot directly state a private cause of action for violation of the Social Security Act, as the Supreme Court has held that the Act affords no private right of action. *Silver v. Baggiano*, 804 F.2d 1211, 1215 (11th Cir.1986). Thus, the critical question on Plaintiffs' statutory claim is whether Plaintiffs can state a § 1983 claim for violation of § 1396a(a)(23)— if they cannot, then their statutory claim must be dismissed.[2]

■ As a general rule, § 1983 provides a cause of action for violations of federal statutes as well as the Constitution. *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990). Two exception exist to this general rule, however, barring § 1983 actions when: (1) "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983," or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself." *Id.* Defendants apparently do not assert that Congress foreclosed § 1983 enforcement in § 1396a(a)(23) itself.

■ Because "[s]ection 1983 speaks in terms of '*rights,* privileges, or immunities,' not violations of federal law," the threshold inquiry in determining whether a statute is enforceable under § 1983 is whether the statute creates a "federal right." *Id.* Accordingly, the first question the Court must address in this case is whether § 1396a(a)(23) creates a federal right in Plaintiffs. This inquiry, in turn, turns on whether "the provision in question was intend[ed] to benefit the putative plaintiff."·

*Id.* If so, the provision creates an enforceable right unless either: (1) it reflects merely a "congressional preference" for a certain kind of conduct rather than a binding obligation on the government, or (2) the interest asserted by the plaintiff is "too vague and amorphous" such that it is "beyond the competence of the judiciary to enforce." *Id.* If the freedom of choice provision was not intended to benefit Plaintiffs, however, then it does not create a federal right that they may enforce under § 1983. *See Silver*, 804 F.2d at 1216 ("it is clear that the statute in question must create rights enforceable by the plaintiff in the case at hand—not rights enforceable by *some* potential plaintiff.").

In *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. at 523, 110 S.Ct. at 2525, the Supreme Court held that a different section of the Medicaid Act ·was enforceable in a § 1983 action.[3] In making its threshold determination that health care providers are the intended beneficiaries of the Act's reimbursement provision, the Court focused on both the language and purpose of the provision, noting that the provision is phrased in terms benefiting health care providers and establishes a system for reimbursement of providers. *Id.* at 508–10, 110 S.Ct. at 2517–18.

The Court concludes, however, that the freedom of choice provision presents a very different situation than the reimbursement provision at issue in *Wilder.* In contrast to the reimbursement provision, "there is no indication in the language [of the freedom of choice provision] that health care practitioners are given any rights by this provision." *Silver*, 804 F.2d at 1217. Moreover, both the legislative history of the provision[4] and the

---

1. This section provides that:
   A State plan for medical assistance must—
   (23) ... provide that any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services.

2. Apparently no other court has ever resolved the issue of whether a health care provider can raise a § 1983 claim for an alleged violation of the freedom of choice provision. In *Silver* the Elev-

enth Circuit Court of Appeals noted the issue and set out the arguments on each side, but ultimately left the question open. 804 F.2d at 1217.

3. *Wilder* involved the section of the Act pertaining to reimbursement of health care providers, codified at 42 U.S.C. § 1396a(a)(13)(A), rather than the freedom of choice provision.

4. The Senate Report accompanying the freedom of choice provision stated that the provision would "[a]llow recipients free choice of qualified providers of health services" and that "people covered under the medicaid program would have free choice of qualified medical facilities and practitioners." *Silver*, 804 F.2d at 1217.

fact that the Supreme Court has specifically held that § 1396a(a)(23) creates rights in Medicaid recipients, *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 785, 100 S.Ct. 2467, 2475, 65 L.Ed.2d 506 (1980), also indicate that the purpose of the freedom of choice provision was not to benefit health care providers, but rather was to benefit Medicaid recipients. *Silver*, 804 F.2d at 1216 ("§ 1396a(a)(23) was intended to benefit Medicaid recipients."). Because the Court concludes that the freedom of choice provision was not intended to benefit Plaintiffs, the Court also concludes that § 1396a(a)(23) does not create a federal right that they may enforce under § 1983. Accordingly, summary judgment is appropriate as to Plaintiffs' statutory claim.

### 2. *Commerce Clause*

■ The Commerce Clause grants Congress the power to "regulate Commerce ... among the several states." U.S. Const. art. 1, § 8, cl. 3. The so-called "dormant Commerce Clause" provides that when Congress has not enacted laws that regulate a given area, states retain the authority to regulate matters of legitimate public concern, but may not "discriminat[e] against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently." *Lewis v. B.T. Investment Managers, Inc.*, 447 U.S. 27, 36, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980). When Congress does legislate in a given area, however, it may "create[ ] an area in which the States may regulate free from Commerce Clause restraints." *Id.* at 35, 100 S.Ct. at 2015. This is true because, in such a situation, the commerce power of Congress is not dormant but rather has been exercised to authorize state regulation, making such regulation "invulnerable to constitutional attack under the Commerce Clause." *Northeast Bancorp, Inc. v. Board of Governors*, 472 U.S. 159, 174, 105 S.Ct. 2545, 2554, 86 L.Ed.2d 112 (1985).

In the Social Security Act, Congress required that states "provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients." 42 U.S.C. § 1396a(a)(19). Defendants assert that the purpose of the restrictions challenged in this case is to allow Defendants to exercise a degree of control over providers in order to enable them to protect recipients and properly allocate scarce public resources. (Br. in Supp. of Mot. for Summ.J. at 8). Defendants argue that because they must perform financial audits and program compliance monitoring on health care providers, it is not feasible to allow unlimited enrollment by providers all over the country due to the significant administrative costs of such a program. (*Id.*).

The Court concludes that the record does not contain sufficient information at the present time to resolve the question of whether the policy in question violates the Commerce Clause. Accordingly, the Court will hold a hearing on the question. Specific areas of interest to the Court are noted *infra*.

### 3. *Equal protection*

■ Plaintiffs have not alleged that the state's policy involves any suspect classification or fundamental right. Accordingly, the policy will be upheld on equal protection grounds so long as it is rationally related to a legitimate governmental purpose. *Hodel v. Indiana*, 452 U.S. 314, 331, 101 S.Ct. 2376, 2386, 69 L.Ed.2d 40 (1981). The Court again concludes that the record does not contain sufficient information at the present time to resolve the question of whether the policy in question violates the Equal Protection Clause, and will address this issue at the hearing.

### 4. *Article IV Privileges and Immunities Clause*

■ The Privileges and Immunities Clause of Article IV prohibits significant discrimination by a state against nonresidents.[5] The Supreme Court has held that corporations and other business entities are not "citizens" within the meaning of this clause. *Paul v. Virginia*, 75 U.S. (8 Wall) 168, 177,

---

5. The clause provides that: "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1.

19 L.Ed. 357 (1869) ("The term citizens [as used in Article IV Privileges and Immunities Clause] applies only to natural persons ... not to artificial persons created by the legislature."); *see also Asbury Hospital v. Cass County*, 326 U.S. 207, 210–11, 66 S.Ct. 61, 63–64, 90 L.Ed. 6 (1945) (corporation is not citizen); *W.C.M. Window Co., Inc. v. Bernardi*, 730 F.2d 486, 492–92 (7th Cir.1984) (unincorporated association is not citizen). Because both Plaintiffs in this action are business entities, the Court concludes that summary judgment is appropriate as to Plaintiffs' Privileges and Immunities Clause claim.

### B. *Plaintiffs' Motion for Hearing*

For reasons discussed *supra*, the Court grants Plaintiffs' Motion for a Hearing. Issues to be discussed at the hearing include:

1. Precisely what is required of out of state businesses in order to comply with the policy?

2. What analysis is appropriate in this case to determine whether or not the policy violates the Commerce Clause? Specifically, does this case presents a "dormant Commerce Clause" situation or has Congress authorized such regulations in § 1396a(a)(19)?

3. Is the State required to use the least burdensome or discriminatory measures to accomplish its stated purpose? If so, are there less burdensome measures that could accomplish the State's purpose in this case?

4. Is the policy rationally related to a legitimate governmental purpose?

### C. *Motion to Extend Discovery*

Plaintiffs moved to extend discovery for the purpose of taking a deposition to authenticate certain documents. Since the motion was filed, however, Defendants have stipulated to the authenticity of the documents in question. Accordingly, the Court denies Plaintiffs' Motion to Extend Discovery as moot.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [30] is **DENIED IN PART,** Defendants' Motion for Summary Judgment [32] is **GRANTED IN PART,**

Plaintiffs' Motion for Hearing [40] is **GRANTED,** and Plaintiffs' Motion to Extend Time for Discovery [41] is **DENIED AS MOOT.** The Court **DEFERS IN PART** ruling on Plaintiff's Motion for Summary Judgment [30] and Defendants' Motion for Summary Judgment [32]. A hearing in this action will be held on July 30, 1993 at 3:00 P.M.

SO ORDERED.