**RX PHARMACIES PLUS, INC., et al., Plaintiffs,**

v.

**Alan WEIL, et al., Defendants.**

No. 94–C–1750.

United States District Court, D. Colorado.

April 25, 1995.

Wade Livingston, Denver, CO, for defendants.

Thomas Frank, Evergreen, CO, for plaintiffs.

## ORDER

CARRIGAN, District Judge.

Plaintiffs RX Pharmacies Plus, Inc., Reigert Corporation, and Tobin's Pharmacy, Inc. (collectively the pharmacies), and Elisio Nieto, Chester Puderbaugh, Karen Luna, and Lydia Herrera (collectively the Medicaid recipients), commenced this action against various officials of the State of Colorado and the Colorado Board of Social Services (collectively Colorado or the state.) Plaintiffs allege that Colorado is in violation of the freedom of choice requirements imposed on state medical assistance plans by 42 U.S.C. § 1396a(a)(23), as well as various state statutes. The parties have filed cross-motions for summary judgment, to which responses have been submitted.

The issues have been fully briefed and oral argument would not materially assist the decision process. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331 and 1367(a).

### I. *BACKGROUND.*

■ Medicaid is the commonly used name for a joint federal and state program providing medical assistance to the poor, disabled, and otherwise needy. States that participate in the Medicaid program must comply with the requirements and standards of Title XIX of the Social Security Act of 1965, 42 U.S.C. §§ 1396 *et seq.*, and its implementing regulations.

■ The Colorado Medicaid program may provide a patient medical assistance under either of two formats: (1) "fee for service" assistance where the state pays the provider for services rendered to a Medicaid recipient, or (2) a health maintenance organization (HMO) or prepaid health plan (PHP) where the state pays a fixed monthly fee per person and the Medicaid recipient receives all medical services through the HMO or PHP.

The United States Department of Health and Human Services, Health Care Financing Administration (HCFA) administers the Medicaid program at the federal level. Effective October 1, 1982, Colorado obtained a waiver of certain federal Medicaid requirements to allow it to operate a primary care physician program (PCP program). The PCP program requires most Medicaid recipients to choose either a PCP or an HMO to act as the recipient's managed care provider. Recipients who choose a PCP may continue to use the pharmacy of their choice, but those who are enrolled in an HMO are required to obtain prescription drugs through the HMO.

On June 29, 1992, the State sent the Denver Regional Office of the HCFA a letter inquiring whether it could "assign" recipients to a managed care provider, including an HMO, if they failed to make a selection themselves. On July 27, 1992, the Denver regional HCFA office informed Colorado that it could make such assignments, but that the process would have to be implemented within the context of the approved PCP waiver.[1]

In March 1994, Colorado sent mailings to thousands of Medicaid recipients who had failed to select a PCP, directing them to select a PCP or HMO and advising them that if they failed to do so, one would be chosen for them.[2] Additionally, in March 1994, the Eastside and Westside Neighborhood Health Centers, which had been servicing approximately 8,000 Medicaid recipients in Denver, reorganized as ChoiceCare, an HMO. Medicaid recipients who had previously chosen PCPs in those centers were automatically enrolled in ChoiceCare.

### II. *ANALYSIS.*

■ Summary judgment is authorized if the pleadings, depositions, and affidavits, if any, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

---

**1.** The letter also indicated that a decision on a pending waiver renewal request would be deferred until the submission was revised to reflect the new assignment procedures. When the waiver extension was approved, however, no mention was made of the new assignment procedures.

**2.** Colorado has not yet assigned medicaid recipients in this fashion, although it has indicated that it may do so in the future.

(1986). The party opposing a properly supported summary judgment motion may not rest upon mere allegations of the complaint, but must set forth evidence of specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is material only if, under governing law, its resolution might affect the action's outcome. A factual dispute is genuine only if a reasonable fact finder could return a verdict for the nonmoving party. *Id.*

### A. *Pharmacy Standing.*

■ Defendants assert that the pharmacy plaintiffs do not have standing to assert claims against Colorado for violation of the freedom of choice provisions of 42 U.S.C. § 1396a(a)(23).[3] Plaintiffs argue that the pharmacies have standing because these freedom of choice provisions benefit Medicaid providers to the extent that they are qualified to provide medical services and undertake to do so.

For a plaintiff to have standing, his or her complaint must "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) (quoting *Association of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)). Only a litigant who "was intended to be protected, benefitted or regulated by the statute under which suit is brought" falls within that statute's zone of interests. *Copper & Brass Fabricators*

*Council, Inc. v. Department of the Treasury,* 679 F.2d 951, 952 (D.C.Cir.1982).

■ The Medicaid statutes were intended to benefit Medicaid recipients. *Silver v. Baggiano,* 804 F.2d 1211, 1216 (11th Cir. 1986); 42 U.S.C. § 1396. Nevertheless, medical providers have been held to have standing to challenge various state Medicaid laws. *See, e.g., Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 510, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990); *Arkansas Medical Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 528–29 (8th Cir.1993); *Colorado Health Care Ass'n v. Colorado Dept. of Social Servs.,* 842 F.2d 1158, 1164 n. 5 (10th Cir.1988). However, all the cases in which medical providers have been found to have standing have involved reimbursement rates or payment procedures.[4]

■ The freedom of choice provisions do not in any way affect a provider's right to reimbursement or payment under Medicaid. *See* 42 U.S.C. § 1396a(a)(23). Further, the Senate Report, in discussing the freedom of choice provisions, reported their purpose as follows:

Under the current provisions of law, there is no requirement on the State that recipients of medical assistance under a State title XIX program shall have freedom in their choice of medical institution or medical practitioner. In order to provide this freedom, a new provision is included in the law to require States to offer this choice.... Under this provision, an individual is to have a choice from among qualified providers of service. Inasmuch as States may, under title XIX, set certain standards for the provision of care, and may establish rates for payment, it is possible that some providers of service may

---

3. The freedom of choice requirements generally provide that state medical assistance plans must preserve a Medicaid recipient's freedom to choose a health care provider. *See* 42 U.S.C. § 1396a(a)(23).

4. The court has been unable to find any cases in which Medicaid providers have been held to have standing to contest the freedom of choice provisions. *See Silver v. Baggiano,* 804 F.2d 1211, 1217 (11th Cir.1986) (declining to resolve whether the freedom of choice provisions create a right enforceable by a podiatrist); *Nutritional*

*Support Servs., L.P. v. Miller,* 806 F.Supp. 977, 980–81 (N.D.Ga.1992) (declining to grant a preliminary injunction in part because plaintiff providers may not have standing to raise a freedom of choice claim); *Bay Ridge Diagnostic Lab., Inc. v. Dumpson,* 400 F.Supp. 1104, 1108 (E.D.N.Y. 1975) ("Any issue concerning the standing of plaintiffs to represent patients' interest in freedom of choice was alleviated by the presence of a number of amici which more directly represent such interests and supported the plaintiffs' position.")

still not be willing or considered qualified to provide the services included in the State plan. This provision does not obligate the State to pay the charges of the provider without reference to its schedule of charges, or its standards of care.

S.Rep. No. 744, 90th Cong., 1st Sess. (1967), *reprinted in* 1967 U.S.C.C.A.N. 2834, 3021. This discussion clearly focuses on the Medicaid *recipient's* right to choose the provider of his or her choice. It further recognizes that, despite the provisions, providers may not be qualified to extend services to recipients. Thus, I conclude that the freedom of choice provisions, 42 U.S.C. § 1396a(a)(23), were intended to protect Medicaid recipients, and do not confer any enforceable rights on Medicaid providers. Accordingly, I conclude that the pharmacy plaintiffs lack standing to challenge Colorado's actions under the freedom of choice provisions.

## B. *Freedom to Choose Pharmaceutical Providers.*

Plaintiffs assert that Colorado violates the freedom of choice provisions contained in 42 U.S.C. § 1396a(a)(23) by not permitting Medicaid recipients who are enrolled in an HMO to utilize the pharmacy of their choice. Plaintiffs contend that such a restriction cannot be imposed without a waiver of the freedom of choice provisions. Colorado asserts that no waiver is needed because federal law expressly preserves an HMO enrollee's freedom of choice only with respect to family planning service providers.

Section 1396a(a)(23), 42 U.S.C., provides in relevant part:

A State plan for medical assistance must—
(23) except as provided in ... section 1915 [42 U.S.C. § 1396n] ..., provide that (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepay-

ment basis), who undertakes to provide him such services, and (B) an enrollment of an individual eligible for medical assistance in a primary care case-management system (described in section 1915(b)(1) [42 U.S.C. § 1396n(b)(1) ] ), a health maintenance organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services under section 1905(a)(4)(C) [42 U.S.C. § 1396d(a)(4)(C) ].

Section 1396n, 42 U.S.C., establishes the situations in which waivers of the requirements of § 1396a may be obtained. Section 1396d(a)(4)(C), 42 U.S.C., contains provisions relating to family planning services.

■ Careful reading of § 1396a(a)(23) reveals that it does not require that HMO enrollees be free to use a pharmacy outside the HMO. Section 1396a(a)(23)(A) provides that Medicaid recipients must have the freedom to choose medical service providers, including the freedom to choose "an organization which provides such services, or arranges for their availability, on a prepayment basis." [5] Once a recipient is enrolled in such an organization, however, § 1396a(a)(23) does not require that he have the freedom to choose pharmaceutical providers outside that organization. Rather, § 1396a(a)(23)(B) merely imposes a requirement that enrollment in an HMO or similar entity "shall not restrict the choice of the qualified person from whom the individual may receive [family planning services]." The fact that the statute expressly preserves freedom to choose family planning service providers but is silent with respect to pharmaceutical providers implies, under familiar canons of statutory construction, that Congress did not intend for HMO enrollees to retain freedom to choose their pharmaceutical providers. *See Public Service Co. of Colo. v. Federal Energy Regulatory Comm'n,* 754 F.2d 1555, 1567 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986); Norman J. Singer, 2A *Sutherland Statutory Construction* § 47.23 (5th ed. 1992) (both

---

5. Because an HMO is an organization that provides medical services on a prepayment basis, the section fairly can be interpreted as requiring that Medicaid recipients have the freedom to choose an HMO as their medical service provider.

discussing maxim *expressio unius est exclusio alterius*, which provides that expression in a statute of certain powers, exceptions, designated persons or things, etc., implies the exclusion of others not mentioned).

This interpretation of § 1396a(a)(23) also coincides with common sense. If HMO enrollees' freedom to use the pharmacy providers of their choice were fully preserved, a state potentially would be required to pay for the same services twice—once to the HMO on a prepayment basis, and again to the outside provider on a fee-for-service basis. This court will not attribute such wastefulness to Congress absent a clear indication of Congressional intent.

 I conclude that Medicaid recipients must be accorded freedom to choose medical providers, including freedom to enroll in an HMO. I further conclude, however, that § 1396a(a)(23) does not grant an HMO enrollee the right to choose a pharmacy outside the HMO. Because an HMO enrollee has no such right under § 1396a(a)(23), the state is not required to obtain a waiver before restricting an HMO enrollee's choice of pharmaceutical provider. Accordingly, the defendants' motion for summary judgment will be granted with respect to this claim and the plaintiffs' countermotion addressed to it will be denied.

## C. *Assignments into HMOs.*

Plaintiffs next assert that the freedom of choice provisions bar Colorado from assigning a Medicaid recipient into an HMO without an appropriate waiver. Plaintiffs' challenge is two-fold: First, they contend that the state will violate these provisions if it assigns to managed care providers, including HMOs, recipients who fail to make a selection, and second, they assert that the state has violated these provisions by automatically enrolling 8,000 Medicaid recipients into ChoiceCare.

With respect to the plaintiffs' first challenge, Colorado responds that this court lacks jurisdiction to resolve the plaintiffs' claim for the asserted reason that none of the plaintiffs have been affected by the threatened assignments. Standing requires, "at an irreducible minimum, [that] the party who invokes the court's authority ... 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758 (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979)).

 I have already determined that the pharmacies lack standing under § 1396a(a)(23) to challenge Colorado's actions. Further, it is undisputed that Colorado has not yet assigned to HMOs any recipients who have failed to make PCP selections. Moreover, none of the plaintiff Medicaid recipients allege that they have been injured by Colorado's plan to make such assignments in the future. Accordingly, I conclude that the court does not have authority to address the plaintiffs' challenge to Colorado's threatened assignment of Medicaid recipients who fail to select a PCP.

Second, the plaintiffs challenge Colorado's March 1994 assignment to ChoiceCare, an HMO, of nearly 8,000 Medicaid recipients who had previously chosen PCPs at Denver's Eastside and Westside Neighborhood Health Centers.[6] Colorado does not dispute that Medicaid recipients who had chosen PCPs at one of the two clinics were automatically enrolled in ChoiceCare. Rather, Colorado contends that these automatic enrollments were entirely lawful.

As already discussed, 42 U.S.C. § 1396a(a)(23) requires that the state permit a Medicaid recipient to select the medical service provider of his or her choice, including the option of choosing an HMO where available. Further, 42 C.F.R. § 434.25 provides that state contracts with an HMO to provide medical services to Medicaid recipi-

---

**6.** At least one of the plaintiff Medicaid recipients, Chester Puderbaugh, was assigned to ChoiceCare when it was formed. Thus, he clearly has standing to challenge the automatic enrollment.

In their reply brief, the plaintiffs assert that a similar "automatic enrollment" mechanism has been used in connection with a newly formed HMO in Pueblo County, Colorado. The issues presented, however, are the same.

ents must acknowledge that enrollment in the HMO is voluntary.

 Colorado argues that it honored the plaintiffs' choice of provider by ensuring that the same doctors would care for them irrespective of the doctors' new affiliation with ChoiceCare. While admitting that enrollment in ChoiceCare affects the recipients' freedom to utilize the pharmacy of their choice, Colorado contends that the recipients' right to choose has been preserved by their freedom to disenroll and choose another PCP at any time. I agree.

Once the Eastside and Westside Neighborhood clinics reorganized as ChoiceCare,[7] Medicaid recipients who had previously selected a PCP at one of the clinics had two choices: they could choose to stay with the same doctor and enroll in ChoiceCare, or they could choose to select another PCP or HMO outside ChoiceCare. When Colorado automatically enrolled the recipients in ChoiceCare, it did not deprive them of the freedom to choose; it merely changed the terms of the choice. Upon learning of the reorganization, Colorado could have sent letters to all affected recipients asking them to make a choice between *joining* ChoiceCare and selecting another PCP or HMO. Instead, Colorado enrolled the recipients in ChoiceCare and sent each a letter asking him or her to choose either to *remain* in ChoiceCare or select another PCP or HMO. In either case, the recipients' freedom of choice is preserved and continued enrollment in the plan is voluntary.[8] Accordingly, I find and conclude that Colorado has not violated the recipients' freedom to choose by assigning them to ChoiceCare under the circumstances presented. Defendants' motion for summary judgment will be granted as to this claim.

## D. *State Law Claims.*

Colorado argues that the court should decline to exercise supplemental jurisdiction over the plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(3). Because the merits of the plaintiffs' federal claims have been reached, the court will exercise its supplemental jurisdiction.

Plaintiffs first contend that Colorado has violated state statutes and regulations identifying the circumstances in which Medicaid recipients may be assigned to a provider. Section 26–4–404(4), Colo.Rev.Stat., provides that the executive director of the state department has the authority to assign a recipient to a managed care provider if the recipient fails to make a selection within a reasonable time. Regulations promulgated by the state department for the purpose of implementing § 26–4–404(4) further provide that recipients who are not otherwise excluded from the PCP Program shall receive information "about assignment to a Primary Care Physician or an HMO/PHP if the client fails to make a selection." 10 Colo.Code Regs. 2505–10 at § 8.211.05.01. Plaintiffs argue that these provisions indicate that the only situation in which "assignment" was contemplated was if the recipient failed to make a PCP selection. Thus, the plaintiffs argue that Colorado's automatic enrollment of thousands of recipients into ChoiceCare violated state law.

 I agree that § 26–4–404(4) and its implementing regulation contemplate only a situation in which assignments are made for failure of the recipient to choose a PCP. The fact that the situation that arose was not contemplated, however, does not render Colorado's response to it unlawful. Colorado was faced with a situation in which the recipients' chosen providers would no longer exist as independent PCPs. Thus, the recipients'

---

7. Plaintiffs suggest that there is something suspect about the reorganization because they assert it was done for the purpose of entering into a contract with Colorado to provide Medicaid services on a capitated basis. Thus, they argue that the reorganization and subsequent assignment of recipients into ChoiceCare furthered Colorado's own financial interests. Colorado is free, however, to provide Medicaid services in the most economical manner possible, as long as the requirements of federal law are met. Thus, the

question is not who benefitted from the reorganization, but whether the automatic enrollment of recipients into ChoiceCare violated 42 U.S.C. § 1396a(a)(23).

8. The court's decision might be different if the recipients were not free to disenroll from ChoiceCare. However, it is not disputed that they are free to disenroll at this time.

selections could no longer be honored—i.e., the recipients necessarily had to change either their individual physicians or the programs they had chosen. As already discussed, Colorado's response to the situation was reasonable in that it preserved the recipients' right to choose. Accordingly, Colorado has not violated § 26–4–404(4).[9]

Second, the plaintiffs assert that Colorado has violated the provisions of Colo.Rev.Stat. § 26–4–404(6). That section provides:

> The state department shall make good faith efforts to obtain a waiver or waivers from any requirements of Title XIX of the social security act which would prohibit the implementation of subsections (3) and (4) of this section. . . . If such waivers are not granted, the state department shall not act to implement or administer subsections (3) and (4) of this section to the extent that Title XIX prohibits it.

Subsection (3) permits the state to contract with vendors for provision of medical benefits on a capitated basis when it will reduce the costs of providing medical benefits. Subsection (4) authorizes the director to require recipients to choose a managed care provider, or to assign recipients to such a provider if they fail to make a selection within a reasonable time.

[17] To the extent that the court has jurisdiction to consider the plaintiffs' claims,[10] this order establishes that Colorado has not violated the freedom of choice provisions in Title XIX.[11] Thus I find that Colorado was not required to obtain a federal waiver, and I conclude that it could not have violated Colo.Rev.Stat. § 26–4–404(6).

■ Third, the plaintiffs claim that Colorado has violated Colo.Rev.Stat. § 26–4–407(3) by failing to promulgate adequate regulations regarding accessibility and quality of pharmaceutical services.[12] However, regulations regarding accessibility and quality of pharmaceutical services can be found at 10 Colo.Code Regs. 2505–10 at §§ 8.211.04, 8.211.22.02, 8.211.22.03, and 8.211.22.04. Plaintiffs do not contend that these regulations are deficient under § 26–4–407(3). Accordingly, I conclude that the defendants are entitled to summary judgment on this claim.

■ Fourth, the plaintiffs have asserted that pharmacies have been excluded from contracting with HMOs in violation of Colo. Rev.Stat. § 26–4–407(1).[13] That section only applies, however, to HMOs that enroll more than forty percent of the Medicaid recipients in counties with more than one thousand recipients. Colo.Rev.Stat. § 26–4–407(2). Colorado has presented affidavits indicating that in counties where these criteria have been met, Medicaid recipients that enroll in an HMO may use any willing pharmacy. Plaintiffs have presented no evidence to the contrary. Accordingly, I find and conclude that Colorado has not violated Colo.Rev.Stat. § 26–4–407(1), and the defendants are entitled to summary judgment on this claim.

Lastly, the plaintiffs have asserted claims pursuant to Colo.Rev.Stat. § 26–4–703. Colorado has moved for summary judgment on these claims for the asserted reason that § 26–4–703 does not apply to HMOs and therefore has no application to this case. Plaintiffs have not responded with facts or

---

**9.** Section 26–4–404(4), Colo.Rev.Stat., and its implementing regulation might be violated if Colorado began to reassign recipients from a selected PCP to an HMO while the PCP continued to offer services as a PCP. That situation is not presented by the facts of this case, however.

**10.** The court has already found that it lacks jurisdiction to consider the plaintiffs' claim that Colorado will violate 42 U.S.C. § 1396a(a)(23) if it assigns recipients who fail to select a managed care provider to an HMO or PCP.

**11.** Those provisions are the only part of Title XIX challenged by the plaintiffs in this action.

**12.** Section 26–4–407(3), Colo.Rev.Stat., provides:

> The medical services board shall establish specifications in rules in order to provide criteria to health maintenance organizations and prepaid health plans which ensure the accessibility and quality of service to clients and the terms and conditions for pharmaceutical contracts.

**13.** Section 26–4–407(1) provides that vendors of pharmaceutical services who comply "with the terms and conditions established by the state department and contracting health maintenance organizations and prepaid health plans shall [not] be excluded from contracting for the provision[] of pharmaceutical services to recipients authorized in this article."

evidence that would support a claim under this section. Accordingly, the defendants are entitled to summary judgment on the plaintiffs claims under § 26–4–703.

Accordingly, IT IS ORDERED that

(1) Defendants' motion for summary judgment is granted;

(2) Plaintiffs' motion for summary judgment is denied;

(3) Within five days of this order, the parties are to file a status report with the court indicating what, if any, claims or issues remain to be decided at trial; and

(4) If any claims or issues remain, the parties and their counsel are ordered to meet and confer within eleven days of this order in a good faith attempt to settle all remaining issues without further litigation, expense or delay. The parties shall report to this court in writing within fifteen days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding would facilitate settlement.