Willie Mae HARRIS, et al., Plaintiffs,

v.

Governor Fob JAMES, et al., Defendants.

No. CV–94–A–1422–N.

United States District Court,
M.D. Alabama,
Northern Division.

April 26, 1995.

**1512**

J. Richard Cohen, Southern Poverty Law Center, Lawrence F. Gardella, Legal Services Corp. of Alabama, Montgomery, AL, for Willie Mae Harris, Linda Patton, Taenika Patton, John Patton, Tommy Gordon and Bertha J.

Henry Clay Barnett, Jr., Herman H. Hamilton, Jr., Capell, Howard, Knabe & Cobbs, P.A., James H. Evans, Office of Atty. Gen., Charles H. Durham, III, Asst. Atty. Gen., Alabama Medicaid Agency, Montgomery, AL, for Fob James and David Toney.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

## I. INTRODUCTION

This cause is now before the Court on the Motion to Dismiss filed by the Defendants [1] on November 28, 1994. For reasons that follow, the Court finds that Defendants' Motion to Dismiss is due to be DENIED.

## II. FACTS AND PROCEDURAL HISTORY

On November 2, 1994, Plaintiffs [2] filed this civil action pursuant to 42 U.S.C. § 1983 seeking to enforce their rights under the Social Security Act. Plaintiffs, who are Medicaid recipients, seek injunctive relief that requires the State of Alabama to ensure necessary medical transportation to them and to all Medicaid recipients, as Plaintiffs allege is mandated by federal law.

Plaintiffs allege that Alabama's failure to offer non-emergency transportation to and from Medicaid providers and its failure to ensure that such transportation is available has forced the Plaintiffs to delay or forgo needed medical services and has subjected the Plaintiffs to a deterioration of their medical conditions. Plaintiffs allege that Defendants have failed to develop, implement, and maintain an adequate state plan that ensures

non-emergency transportation for recipients and offers such transportation. Plaintiffs contend that 42 U.S.C. §§ 1396, 1396a-u, the Medicaid subchapter of the Social Security Act, and regulations issued thereunder, require such transportation and that the state's failure to provide it violates their rights.

Specifically, Plaintiffs point to 42 C.F.R. § 431.53, which provides:

Assurance of transportation.

A State plan must

(a) Specify that the Medicaid agency will ensure necessary transportation for recipients to and from providers; and

(b) Describe the methods that the agency will use to meet this requirement.

Plaintiffs ask this Court to (1) certify the suit as a 23(b)(2) class action, (2) declare that the Alabama state plan for administering Medicaid violates rights guaranteed to the Plaintiffs by 42 U.S.C. § 1396a and the regulations adopted thereunder, (3) order Defendants to develop, implement, and maintain a state plan for transportation that will protect Plaintiffs' rights as guaranteed by 42 U.S.C. § 1396a and the regulations adopted thereunder, (4) award reasonable attorneys' fees and costs, and (5) order any other relief as the Court deems necessary and just.

On November 28, 1994, Defendants filed a Motion to Dismiss in which they stated numerous grounds for dismissal. The motion was not supported by a brief nor did it sufficiently explain the purported bases for dismissal. After Plaintiffs objected to Defendants' failure to explain the grounds for their motion, this Court set a briefing schedule for the motion. In response, the parties have submitted numerous briefs and letters in support of and in opposition to the Motion to Dismiss.

---

**1.** Plaintiffs named two defendants in their suit: James Folsom, then Governor of the State of Alabama, and David Toney, the Commissioner of the Alabama Medicaid Agency (hereinafter referred to collectively as "Defendants"). Each defendant is named in his official capacity only. After Plaintiffs filed this suit, Alabama elected a new Governor, Fob James; therefore, he has been substituted as a defendant.

**2.** The Court will refer to Willie Mae Harris, Linda Patton, Tanika Patton, John Patton, Tommy Gordon, and Bertha J. collectively as "Plaintiffs." They filed this suit on behalf of themselves and all others similarly situated.

Since this case involves an interpretation of Medicaid statutes and regulations administered by the United States Department of Health and Human Services ("HHS"), the court entered an order on December 22, 1994 inviting HHS to lend its expertise to the court by participating amicus curiae. *See, Rosado v. Wyman,* 397 U.S. 397, 407 fn. 9, 90 S.Ct. 1207, 1215 fn. 9, 25 L.Ed.2d 442 (1970). On February 15, 1995, the Department declined the invitation to do so.

## III. STANDARD OF REVIEW

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) (citation omitted) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") The court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232. Moreover, the court is aware that the threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is "exceedingly low." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

## IV. DISCUSSION

Defendants base their Motion to Dismiss on many arguments. The most important of these is Defendants' contention that no specific non-emergency transportation benefits are mandated by federal statute. They argue that the statute itself does not require transportation, so that the regulation referring to transportation goes beyond the congressional mandate. Therefore, Defendants contend, the regulation does not create a right which is enforceable under § 1983. They argue further that although the Medicaid regulations that implement the statute recognize the need for transportation, those regulations fail to spell out any specific pa-

rameters or requirements regarding transportation. Defendants contend that the issue has been left non-specific so that each state may best deal with this issue as it sees fit. Consequently, Defendants argue that Plaintiffs have not asserted a valid cause of action under 42 U.S.C. § 1983.

Plaintiffs contend that the Motion to Dismiss is due to be denied. They argue that this court is bound by the holding in *Smith v. Vowell,* 379 F.Supp. 139 (W.D. Tex.1974), *aff'd,* 504 F.2d 759 (5th Cir.1974) and that this holding disposes of many of the arguments that Defendants have made. Plaintiffs assert that any state participating in the Medicaid program must provide a state plan for compliance with federal law and that as part of this plan the state Medicaid agency must specify that it will ensure necessary transportation to recipients to and from health care providers and describe how the state will meet the requirement. Plaintiffs acknowledge that states retain flexibility in designing their state plans, but they contend that specific, binding federal regulations require states to ensure non-emergency medical transportation.

The issue before the court is whether the complaint, accepting its factual allegations as true, states a claim for which relief may be obtained under 42 U.S.C. § 1983.

### A. Medicaid

By enacting Title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396 *et seq.,* Congress established a federal program called Medicaid which "provides financial assistance to States so that they may furnish medical care to needy individuals." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990). The Eleventh Circuit has explained that

Medicaid is a cooperative venture of the state and federal governments. A state which chooses to participate in Medicaid submits a state plan for the funding of medical services for the needy which is approved by the federal government. The federal government then subsidizes a certain portion of the financial obligations which the state has agreed to bear. A **state participating in Medicaid must**

comply with the applicable statute, Title XIX of the Social Security Act of 1965, as amended 42 U.S.C. § 1396, et seq., and the applicable regulations.

*Silver v. Baggiano*, 804 F.2d 1211, 1215 (11th Cir.1986) (emphasis added).

## B. 42 U.S.C. § 1983

Plaintiffs assert correctly that this court has original jurisdiction over this case because it arises under federal law. *See*, 42 U.S.C. § 1331. Plaintiffs allege that the Defendants, acting in their official capacities as state actors, have violated federal law and caused Plaintiffs to be deprived of rights secured to them by 42 U.S.C. § 1396a and 42 C.F.R. §§ 431.53 and 441.62. Plaintiffs seek redress for this violation of their rights by bringing suit under 42 U.S.C. § 1983.

### 1. Enforcing a Statutory Right Under Section 1983

■ By its terms, Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. The full text of Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. As the plain language of Section 1983 indicates, the remedy encompasses violations of federal laws as well as violations of rights secured by the Constitution of the United States. The Supreme Court has held on numerous occasions that the coverage of Section 1983 must be construed broadly. *Golden State Transit Corp. v. City of Los Angeles, Ca.*, 493 U.S. 103, 105, 110 S.Ct. 444, 447, 107 L.Ed.2d 420 (1989).

The Eleventh Circuit has noted that, "Section 1983 is the exclusive statutory cause of action available to a plaintiff seeking compli-

ance with the Social Security Act on the part of a participating state." *Silver*, 804 F.2d at 1215.

Defendants argue, however, that the regulation regarding transportation does not create a right which may be enforced under this statute.

#### a. Early Cases

In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that the remedy that Section 1983 provides encompasses violations of federal statutory as well as constitutional law. *Id.* at 4, 100 S.Ct. at 2504. Subsequent Supreme Court opinions have carved out and defined exceptions to this general rule. *See, e.g., Suter v. Artist M.*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992); *Wilder*, 496 U.S. 498, 110 S.Ct. 2510; *Golden State*, 493 U.S. 103, 110 S.Ct. 444 (1989); *Wright v. Roanoke Redevelopment & Housing Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

The Supreme Court has articulated two exceptions under which statutory violations are not actionable under Section 1983.

> A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) the statute does not create enforceable rights, privileges, or immunities within the meaning of § 1983, or (2) Congress has foreclosed such enforcement of the statute in the enactment itself.

*Wilder*, 496 U.S. at 508, 110 S.Ct. at 2517 (internal quotations and citations omitted). *Accord, Wright*, 479 U.S. at 423, 107 S.Ct. at 770.

Due to the importance of this issue, this Court offers the following overview of the relevant Supreme Court cases that led to these exceptions.

Shortly after it decided *Thiboutot*, the Supreme Court addressed the availability of Section 1983 to redress alleged violations of the Developmentally Disabled Assistance and Bill of Rights Act ("DDA"). *Pennhurst*, 451 U.S. at 5, 101 S.Ct. at 1534. The Supreme Court described the DDA as "a federal-state grant program whereby the Federal Govern-

ment provides financial assistance to participating States to aid them in creating programs to care for and treat the developmentally disabled." *Id.* at 11, 101 S.Ct. at 1536–37. The DDA included a "bill of rights provision" wherein Congress made "findings respecting the rights of persons with developmental disabilities." 42 U.S.C. § 6010.

In *Pennhurst,* the Supreme Court held that Congress did not intend the Congressional findings to create rights and obligations enforceable under Section 1983. *Id.* at 15–27, 101 S.Ct. at 1538–44. The Court emphasized that legislation enacted pursuant to the spending power is in the nature of a contract between the states and the federal government.

> The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously. By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation.

*Id.* at 17, 101 S.Ct. at 1540 (citations omitted). The Court framed the crucial inquiry in that case as "whether Congress spoke so clearly that we can fairly say that the State could make an informed choice." *Id.* at 25, 101 S.Ct. at 1544.

Consequently, the Supreme Court concluded that because the relevant section of the DDA did nothing more than express a congressional preference for certain kinds of treatment and make a general statement of "findings," the section was "too thin a reed to support the rights and obligations read into it." *Id.* at 19, 101 S.Ct. at 1541. After examining the legislative history, the Court concluded that the section was intended to be "hortatory, not mandatory." *Id.* at 24, 101 S.Ct. at 1543. The court found the relevant language to be congressional encouragement rather than the imposition of binding obli-

gations on the states. *Id.* at 27, 101 S.Ct. at 1544.

As for the other sections of the DDA that the Supreme Court found did impose binding obligations on the state, the court distinguished *Thiboutot* by noting that the plaintiffs in *Pennhurst* were claiming only that the state plan had not provided adequate assurances to the Secretary, whereas the *Thiboutot* plaintiffs were claiming that state law prevented them from receiving federal funds to which they were entitled. *Id.* at 28, 101 S.Ct. at 1545. Thus, because the plaintiffs in *Pennhurst* were not the intended beneficiaries of the obligation on the State they could not sue under Section 1983 to enforce that obligation. Although the Supreme Court in *Pennhurst* did not clearly articulate the complete analytical paradigm for determining whether Section 1983 provides a remedy for violation of rights created by a federal statute, it did provide some of the key concepts.

In *Wright,* the next important case on use of Section 1983 to remedy violations of rights created by federal statute, tenants living in low-income housing projects brought suit under Section 1983 alleging that the owners of the projects had over-billed the tenants for their utilities and violated the rent ceiling in the Brooke Amendment to the Housing Act of 1937. After recognizing that *Thiboutot* held that Section 1983 was available to enforce violations of federal statutes by agents of the State, the Court noted that two exceptions to this general rule existed. *Wright,* 479 U.S. at 423, 107 S.Ct. at 770. The first exception arises out of *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) and provides that Section 1983 does not provide a remedy where Congress has foreclosed private enforcement of the statutorily create right in the same legislation that creates the right. *Wright,* 479 U.S. at 423, 107 S.Ct. at 770. The Court describes the second exception by noting that in *Pennhurst,* a Section 1983 action did not lie

> because the statutory provisions were thought to be only statements of 'findings' indicating no more than a congressional

preference—at most a 'nudge in the preferred directio[n],' and not intended to rise to the level of an enforceable right. *Wright*, 479 U.S. at 423, 107 S.Ct. at 770. After explaining these exceptions, the Court found that the administrative enforcement scheme did not foreclose private enforcement under Section 1983. The Court then turned to the question of whether the Brooke Amendment and the regulations give the tenants any specific or definable rights to utilities.

The Court noted that the Brooke Amendment clearly established a mandatory limitation on the amount of rent that could be charged and that the HUD interim regulations expressly required that a reasonable amount for utilities be included in the rent that the owner charged the tenant. A majority of the Justices concluded that "HUD's view is entitled to deference as a valid interpretation of the statute, and Congress in the course of amending that provision has not disagreed with it." *Id.* at 430, 107 S.Ct. at 774. Thus, the regulations at issue which defined the term rent in the relevant statute by including a reasonable allowance for utilities had "the force of law." *Id.* at 431, 107 S.Ct. at 774. In this case, the Supreme Court decreed that a requirement in a HUD regulation that rent include a "reasonable" allowance for utilities was not too amorphous or vague to confer on tenants an enforceable right within the meaning of Section 1983. The Court concluded by saying that in its view

> the benefits Congress intended to confer on tenants are sufficiently specific and definite to qualify as enforceable rights under *Pennhurst* and § 1983, rights that are not, as [the owner] suggests, beyond the competence of the judiciary to enforce.

*Wright*, 479 U.S. at 432, 107 S.Ct. at 774–75.

In *Wright*, the dissent challenges the majority by noting that the regulation in question seems to exceed the authority of the amendment to the statute. The dissent's dissatisfaction is best summarized in the following paragraph.

> [I]n my view [the tenants] do not also have a statutory entitlement enforceable in federal courts by virtue of 42 U.S.C. § 1983.

Neither the Brooke Amendment's language, nor its legislative history, nor its interpretation by HUD supports the conclusion that Congress intended to create an entitlement to reasonable utilities when it enacted the statute; and **even if agency regulations, standing alone, could create such a right,** the temporary regulations relied upon by [the tenants] in this case are not suspectable of judicial enforcement.

*Wright*, 479 U.S. at 441, 107 S.Ct. at 779–80 (O'Connor dissent; emphasis added). However, a majority of the Justices found it appropriate to rely on the temporary regulations.

The next case decided by the Supreme Court that discusses in detail the availability of suit under Section 1983 for violations of federal statutes is *Golden State*, 493 U.S. 103, 110 S.Ct. 444. This case addressed whether the National Labor Relations Act granted a taxicab franchisee rights enforceable under Section 1983. This case begins by noting that the remedy provided by Section 1983 encompasses violations of rights created by federal statutes as well as violations of rights created by the federal constitution. The Court notes that

> [a] determination that § 1983 is available to remedy a statutory or constitutional violation involves a two-step inquiry. First the plaintiff must assert the violation of a federal right. Section 1983 speaks in terms of "rights, privileges, or immunities," not violations of federal law. In deciding whether a federal right has been violated, we have considered whether the provision in question creates obligations binding on the governmental unit or rather "does no more than express a congressional preference for certain kinds of treatment." The interest the plaintiff asserts must not be "too vague or amorphous" to be "beyond the competence of the judiciary to enforce." We have also asked whether the provision in question was intend[ed] to benefit" the putative plaintiff.

> Second, even when the plaintiff has asserted a federal right, the defendant may show that Congress "specifically foreclosed a remedy under § 1983."

*Golden State,* 493 U.S. at 106, 110 S.Ct. at 448 (citations omitted). It is interesting to note that the Court reversed the order in which it discusses the applicability of the two exceptions to the *Thiboutot* holding. Obviously, the "creates an enforceable right" part of the analysis is now of much greater import. The reordering of the considerations is not the only evidence of this change in emphasis. The "creates an enforceable right" analysis now involves analysis of the following sub-issues: does the statute create a binding obligation on the state; is it intended to benefit the putative plaintiffs; and is the interest too vague or amorphous so as to be beyond the competence of the judiciary to enforce.

The next case in this line, *Wilder,* 496 U.S. 498, 110 S.Ct. 2510, is very important to the determination of the present suit as it is also a Medicaid Act case. In 1990, the Supreme Court addressed whether a health care provider may bring an action under Section 1983 to challenge the method by which a State reimburses health care providers under the Medicaid Act as amended by the Boren Amendment. The Boren Amendment requires reimbursement according to rates that a State finds are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities. The Court applied the test as it had been stated in *Golden State.* After concluding that it was obvious that under the Act health care providers were intended beneficiaries, the Court emphasized that the statute and regulations were phrased in mandatory rather than precatory terms. The Court analogized to *Wright* and distinguished *Pennhurst* to conclude that the interest created was not too vague or amorphous such that it is beyond the competence of the judiciary to enforce. Ultimately, the Court concluded that this portion of the statute was enforceable by the providers in an action under Section 1983.

The Eleventh Circuit has utilized the *Wilder/Wright* paradigm. In a case addressing the availability of Section 1983 to enforce a right created by the Medicaid Act, the Eleventh Circuit explained the relevant body of cases by stating that

> Supreme Court precedent establishes that, subject to certain exceptions discussed below, violations of the Social Security Act can be remedied in a § 1983 action. In *Maine v. Thiboutot,* the Court construed § 1983 as authorizing suits to redress violations by state officials of rights created by federal statutes. Section 1983 is the exclusive statutory cause of action available to a plaintiff seeking compliance with the Social Security Act on the part of a participating state.

> The Court, however, has recognized **two exceptions to the application of § 1983 to statutory violations.** First, if Congress has foreclosed private enforcement of the statute in question in the enactment of the statute itself, then § 1983 is unavailable to enforce federal rights under that statute. For example, when the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983. Second, if Congress has not created enforceable rights in the relevant statutory provision, there is no cause of action available under § 1983. By its terms, § 1983 does not create substantive rights; it provides a remedy against state officials for deprivations of rights established elsewhere under federal law.

*Silver,* 804 F.2d at 1215–16 (emphasis added; internal quotations and citations omitted).[3]

 After the aforementioned cases, a court would determine whether Section 1983 provides a private cause of action for violations of a particular federal statute by ascer-

---

**3.** After articulating the applicable exceptions, the *Silver* court focused on the second step in the aforementioned analysis and explored whether § 1396a(a)(23) creates rights enforceable by health care providers. Ultimately, the court remanded the case without expressing an opinion on the question of whether the plaintiff could maintain an action under § 1983 for alleged violations of that section. *Silver,* 804 F.2d at 1218. Thus, this case does not dispose of the issues presently before this court; rather it only illuminates the basic analytical framework that the Eleventh Circuit has discussed as the appropriate way to determine whether a cause of action exists under Section 1983.

taining answers to the following questions: (1) was the provision in question intended to benefit the plaintiff; (2) does the statutory provision in question create binding obligations on the defendant governmental unit rather than merely expressing a congressional preference; (3) is the interest that the plaintiff asserts specific enough to be enforced judicially rather than being too vague and amorphous for such enforcement. If the plaintiff demonstrates that the answer to each of these questions is yes, then Section 1983 can be used to seek a remedy, unless the defendant can show that Congress foreclosed Section 1983 enforcement by providing a comprehensive enforcement mechanism for the protection of the federal right. Mere availability of administrative protection is not sufficient. Rather, the statutory framework must be such that allowing the plaintiff to bring a Section 1983 action would be inconsistent with Congress' carefully tailored scheme.

### b. A New Approach?

The most recent case from the Supreme Court addressing the availability of Section 1983 as a remedy for violations of federal law is *Suter v. Artist M.*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). This case concerned whether the "reasonable efforts" clause of the Adoption Assistance and Child Welfare Act created rights enforceable in a Section 1983 suit. Specifically, the Adoption Act provided that for a state to receive payment, it must have a plan approved by the Secretary of Health and Human Services, and the plan must provide, among other things, that "in each case, reasonable efforts will be made" to prevent the need to remove a child from his home or to make it possible for a removed child to return to his home. Although this case cites as authority for its

holding such cases as *Wilder, Wright, Golden State,* and *Thiboutot,* many call the decision inconsistent with such cases.[4] On the other hand, a majority of courts have subsequently reconciled *Suter* with the Supreme Court's earlier cases. *See, e.g., Martin v. Voinovich,* 840 F.Supp. 1175, 1194–95 (S.D.Ohio 1993) (collecting cases).[5]

*Suter* begins by noting that *Thiboutot* established that Section 1983 does provide a remedy for violations of federal statutes and that the Supreme Court has subsequently recognized that Section 1983 is not available where Congress has foreclosed such enforcement or where the statute did not create enforceable rights, privileges, immunities. Having established these general principles, the Court next discusses one of the rationales for its determination in *Pennhurst* that a particular statutory violation could not be remedied through a suit under Section 1983. This rationale focuses on the fact that the legitimacy of Congress' power to legislate under the spending power rests on whether the State voluntarily and knowingly accepts the terms of the "contract" into which it enters when it agrees to participate in a federally funded program governed by rules in a statute. The court concludes that a State cannot knowingly accept if it is unaware of the conditions of participation in a government program or if it is unable to ascertain what is expected of it. *Suter,* 503 U.S. at 353–56, 112 S.Ct. at 1366. The Court emphasizes that in *Pennhurst* the state did not have adequate notice because the statutory section in question spoke in terms intended to be hortatory, not mandatory.

In *Suter,* the Court states that the key issue before it is "did Congress, in enacting the Adoption Act, unambiguously confer

---

4. Even Justice Blackmun expressed such a view in his dissenting opinion in *Suter.*

5. *Martin* explains that
 [a]lthough the [enumerated] decisions have attempted to harmonize *Wilder* and *Suter,* they have not all followed the same approach in doing so. The Seventh Circuit distinguishes the *Wilder* and *Suter* cases on the basis that in *Wilder* the plaintiffs asserted the right to a plan that did not violate federal law, whereas the *Suter* plaintiffs alleged an isolated violation of

a concededly legal plan. Other courts have focused on the *Suter* Court's finding that there was no congressional guidance on how to measure "reasonable efforts," and that the term imposed only a generalized duty. Courts have also recognized that *Suter* emphasized the requirement that the federal statute must unambiguously delineate the States' obligations in order to give the States' [sic] notice of what is required for participation in the funding.
 *Martin,* 840 F.Supp. at 1194 (citations omitted).

upon the child beneficiaries of the Act a right to enforce the requirement that the State make reasonable efforts to prevent a child from being removed from his home, and once removed to reunify the child with his family?" *Id.* at 357, 112 S.Ct. at 1367. The Court quickly decides that the language in the statute is mandatory in its terms. However, the Court finds that the language of the statute and the regulations promulgated by the Secretary to enforce the Adoption Act do not evidence a requirement on a state receiving funds under the Adoption Act to do more than the state in question had done—namely, provide a plan. Thus after examining the relevant language in the context of the entire Act, including the relevant regulations promulgated under the Act, the Court holds that the language in question did not create enforceable rights to something more than a plan such that private individuals could file suit under Section 1983 for failure to provide services, even if such a failure was inconsistent with the plan.

The *Suter* opinion relies on three points to distinguish *Wilder.* First, the statute and regulations at issue in *Suter* offered no guidance as to how "reasonable efforts" are to be measured. *Suter,* 503 U.S. at 358–59, 112 S.Ct. at 1368. Second, the way in which a State was to comply with this directive and with the other provisions of the Act was, within broad limits, left to the State's discretion. *Id.* And third, the statutory provisions provided a sufficiently comprehensive enforcement method to show that the absence of a remedy to private plaintiffs under Section 1983 does not make the reasonable efforts clause a dead letter. All of these bring new considerations to the analysis of the appropriateness of claims for violations of statutorily created rights under Section 1983.

#### c. Congress Reacts to *Suter*

In 1994, Congress, apparently dissatisfied by the Supreme Court's interpretation in *Suter* of the scope of Section 1983, and the effect it might have on enforcement of the Social Security Act, enacted 42 U.S.C. § 1320a–2.[6] This section purports to address

the "[e]ffect of failure to carry out State plan" and provides that

> [i]n an action brought to enforce a provision of this chapter, such provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan. This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements **other than by overturning any such grounds applied in** *Suter v. Artist M.,* [503 U.S. 347], 112 S.Ct. 1360 [118 L.Ed.2d 1] (1992), **but not applied in prior Supreme Court decisions respecting such enforceability;** provided, however, that this section is not intended to alter the holding in Suter v. Artist M. that section 671(a)(15) of this title is not enforceable in a private right of action.

42 U.S.C. § 1320a–2 (1994) (emphasis added). Thus, Congress has rejected the Supreme Court's interpretation in *Suter* and has mandated that courts continue to apply a pre-*Suter* approach.

#### d. Present Approach

As of the date of this opinion, the only reported decision that addresses the impact of 42 U.S.C. § 1320a–2 · is *Jeanine B. v. Thompson,* 877 F.Supp. 1268 (E.D.Wis.1995). The case, a class action brought on behalf of children in the foster care system, seeks injunctive relief to remedy alleged violations of rights created by the state and federal constitutions and various federal statutes. In *Jeanine B.,* the court addressed the appropriateness of the motion to dismiss filed by the numerous state officials responsible for administering the foster care system in which the plaintiffs have been placed. Specifically, the children alleged that the defendants had violated their civil rights by violating the Adoption Assistance and Child Welfare Act ("Adoption Assistance Act"). Like Medicaid, the Adoption Assistance Act creates a cooperative federal-state program under which the federal government provides

---

**6.** The Court notes that 42 U.S.C. § 1320a–10 contains identical language to 42 U.S.C. § 1320a–2.

those states which choose to participate with funding for specified programs.

Apparently relying on *Suter,* Defendants argued that the children could not use Section 1983 to seek enforcement of the requirements of the Adoption Assistance Act. The court held that in light of 42 U.S.C. § 1320a–2 only the narrow holding of *Suter* remains intact, and thus, *Suter* stands only for the proposition that 42 U.S.C. § 671(a)(15) is too vague and amorphous to provide a cause of action under Section 1983. *Jeanine B.,* 877 F.Supp. at 1283–84. The court further explained that it "must 'rewind the clock' and look to cases prior to *Suter* to determine the enforceability of other provisions...." *Id.* Moreover, the court determined that 42 U.S.C. § 1320a–2

> overrules the general theory in Suter that the only private right of action available under a statute requiring a state plan is an action against the state for not having that plan. Instead the previous tests of Wilder and Pennhurst apply to the question whether or not the particulars of a state plan can be enforced by its intended beneficiaries.

*Id.*

This court concurs with the above interpretation of the impact of 42 U.S.C. § 1320a–2. Therefore, this court finds that in light of this amendment *Suter* is limited in its application to cases involving 42 U.S.C. § 671(a)(15). To the extent that the rest of the *Suter* opinion adds to or changes the analysis established by prior cases such as *Wilder,* this Court will not apply it to this case. Thus, in discerning whether the provisions of the Medicaid Act and its regulations create a right enforceable under Section 1983, the Court will apply the test as it existed prior to the determination of *Suter* as previously described in this opinion.

### 2. The Particular Provisions at Issue

As previously mentioned, Subchapter XIX of the Social Security Act governs grants to states for medical assistance programs. Specifically, the subchapter appropriates funds

[f]or the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and the aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each such fiscal year a sum sufficient to carry out the purposes of this subchapter.

42 U.S.C. § 1396. Sums appropriated under this section are used for making payments to States which have submitted, and had approved by the Secretary, plans for medical assistance. *Id.* Requirements for the contents of State plans for medical assistance are provided in 42 U.S.C. § 1396a(a). The relevant portion of this section for purposes of this case is found in 42 U.S.C. § 1396a(a)(4)(A). According to this section, a State plan for medical assistance must provide

**such methods of administration** (including methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods, and including provision for utilization of professional medical personnel in the administration and, where administered locally, supervision of administration of the plan) **as are found by the Secretary to be necessary for the proper and efficient operation of the plan[.]**

42 U.S.C. § 1396a(a)(4)(A) (emphasis added).

Through regulations promulgated under this section and by authority of 42 U.S.C. § 1302,[7] the Secretary has provided which methods of administration are necessary for the proper and efficient operation of the plan.

---

7. Congress has charged the Secretary of the Treasury, the Secretary of Labor, and the Secretary of Health and Human Services with the responsibility of making and publishing such rules and regulations as may be necessary to the efficient administration of the functions with which each is charged under Chapter VII of the Social Security Act. 42 U.S.C. § 1302

*See,* 42 C.F.R. §§ 431.1 et seq. This part of the Code of Federal Regulations

> establishes State plan **requirements for the designation, organization, and general administrative activities of a State agency responsible for operating the State Medicaid program,** directly or through supervision of local agencies.

42 C.F.R. § 431.1 (emphasis added). In particular, Subpart B sets forth State plan requirements that pertain to the proper and efficient administration of such a plan. *See,* 42 C.F.R. § 431.40(a)(2). The provision at issue in this case [8] is contained within Subpart B and is denominated 42 C.F.R. § 431.53. This provision states that

> [a] State plan **must**—
>
> (a) Specify that the Medicaid agency will ensure necessary transportation for recipients to and from providers; and
>
> (b) describe the methods that the agency will use to meet this **requirement.**

42 U.S.C. § 431.53 (emphasis added). Although it is not immediately apparent from the text of this regulation that it is meant to describe a method of administration that the Secretary found necessary for the proper and efficient operation of the plan, it is clear that is exactly what it is. A small reference number is noted immediately after the text of this regulation: "Sec. 1902(a)(4) of the Act." From the content of the surrounding regulations, it is clear that the Act referred to here is Section XIX of the Social Security Act of 1965. The text of Public Law 89–97, which is the 1965 amendments to the Social Security Act, reveals that Sec. 1902(a)(4) was codified as 42 U.S.C. 1396a(a)(4)(A). Clearly, this regulation was issued pursuant to Section 1396a(a)(4)(A), the statutory requirement that a state plan must provide such methods of administration as are found by the Secretary to be necessary for the proper and efficient operation of the plan. More-

over, it is likely that the regulation is very old since it refers to the public law cite rather than the United States Code cite.

It is important to note that nearly all of these Supreme Court cases, as well as cases from lower courts, examine the statute and the regulations together in determining whether or not the statute creates a right enforceable under Section 1983. *See, e.g., Suter,* 503 U.S. at 361, 112 S.Ct. at 1369; *Wright,* 479 U.S. at 431–32, 107 S.Ct. at 774; *Loschiavo v. City of Dearborn, Mich.,* 33 F.3d 548, 551–52 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995); *West Virginia Univ. Hosp., Inc. v. Casey,* 885 F.2d 11, 18 (3rd Cir.1989), *aff'd,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *Samuels v. District of Columbia,* 770 F.2d 184, 199–200 (D.C.Cir. 1985). To the extent that the Defendants argue that the regulations upon which Plaintiffs rely cannot establish any right enforceable under Section 1983, they are incorrect. A court may consider regulations promulgated to effectuate a statute. The regulations in question are clearly consistent with the authority granted to the Secretary by the statute. Moreover, if the regulations and statute together are specific enough to survive an application of the analysis developed by the Supreme Court in the *Pennhurst/Wright/Golden State/Wilder* line of cases, then the Plaintiffs may seek redress for alleged violations of rights created by the statute and regulation in a Section 1983 suit, so long as the statute does not foreclose private enforcement by its own terms.

### 3. Application of the Paradigm

Read in the light of the relevant regulations, it is clear the statutory provision and the regulations at issue in this case are intended to benefit people such as the Plaintiffs. The statute requires states to provide

---

**8.** Plaintiffs also rely on 42 C.F.R. § 441.62 which states that an agency must offer to the family or recipient, and provide if the recipient requests, necessary assistance with transportation as required under § 431.53 of this chapter and necessary assistance with scheduling appointments for services. This section does not reveal the section of the statute from which it originates. It is contained in a part of the CFR which sets forth

State plan requirements and limits on FFP services defined in part 440 of this subchapter. The subpart of the CFR states that it implements sections 1902(a)(43) and 1905(a)(4)(B) of the Social Security Act. Thus, this regulation is also firmly grounded in the statute. The parties have not focused their argument on the meaning of this CFR section.

all that the Secretary deems necessary for the proper and efficient administration of the state's plan. The regulations make clear that the intent of such a requirement is to facilitate the provision of services to the recipients. The Secretary has found that provision of transportation to and from providers is a method of administration necessary for the proper and efficient operation of a plan to provide medical services to qualified recipients. Plaintiffs are alleged to be recipients of Medicaid who have been harmed by their inability to get to providers of medical services. Defendants do not dispute that the Plaintiffs are intended beneficiaries of the statute and regulation sections at issue. Thus, this Court is satisfied that the sections were intended to benefit the Plaintiffs.

The relevant statute and regulations are written in indisputably mandatory language. There can be no doubt that the relevant portions of the statute and regulations express an intent to create a binding obligation on the states rather than merely to express a congressional preference. In other cases, courts have found the use of words like "must" to be a congressional indication that the provision is meant to be mandatory rather than precatory. Unlike the state in *Pennhurst*, Alabama cannot claim that there was no knowing acceptance of its transportation obligations on the grounds that it was unaware that receipt of federal Medicaid matching funds was conditioned on the provision of necessary transportation, or that it was unable to ascertain what was expected of it. The statute and regulations do not merely voice congressional findings; they impose obligations. Moreover, the regulations requiring such transportation are very old and as long ago as 1974 the Circuit Court of Appeals approved a reading of such regulations that included non-emergency transportation. *See Smith v. Vowell*, 379 F.Supp. 139 (W.D.Tex.1974), *aff'd*, 504 F.2d 759 (5th Cir. 1974). Alabama could have declined to renew its "contract" long before now if it was not willing or able to provide non-emergency transportation as required by its participation in the Medicaid program.

Whether the interest that the Plaintiffs seek to assert is specifically defined so as to be judicially enforceable under Section 1983 is the area in which courts have the most difficulty applying the Supreme Court's test. While it could be argued that the congressional mandate articulated in the relevant sections of the statute and regulations is vague and amorphous, it is no more vague and amorphous than other provisions that courts have found themselves able to enforce. *See, e.g., Wilder*, 496 U.S. at 512, 110 S.Ct. at 2518; *Wright*, 479 U.S. at 420, 107 S.Ct. at 768. In fact, in *Smith v. Vowell*, a court found itself capable of enforcing a judicial remedy for nearly identical language in a federal regulation. This Court cannot conclude that the provision is beyond its competence to enforce.

▪ In light of the foregoing, the Court finds that Plaintiffs have made allegations necessary to establish that 42 U.S.C. § 1396a(a)(4)(A) and 42 C.F.R. §§ 431.53 & 441.62 create enforceable rights. Consequently, this action may be brought under Section 1983 unless Congress has foreclosed private enforcement of the statute in question by enacting the statute itself. Defendants have not shown that Congress specifically foreclosed a remedy under Section 1983 by enacting the provisions in question. Moreover, *Wilder* held that Congress did not intend to foreclose the use of Section 1983 as a means of enforcing the Medicaid Act. *Wilder*, 496 U.S. at 522, 110 S.Ct. at 2524. Thus, this court is satisfied that Plaintiffs may proceed with this action under Section 1983.

### C. *Smith v. Vowell*

Plaintiffs direct this court's attention to several cases that have held that non-emergency transportation is required under the statute and regulations at issue in this case. *See, e.g., Morgan v. Cohen*, 665 F.Supp. 1164, 1175 (E.D.Pa.1987); *Fant v. Stumbo*, 552 F.Supp. 617, 618–19 (W.D.Ky.1982); *Smith v. Vowell*, 379 F.Supp. 139. The most important of these cases is *Smith v. Vowell*, which involved an action brought by a Texas welfare recipient on behalf of himself and others similarly situated seeking injunctive and declaratory relief. The recipient claimed that Texas had failed to comply with the Social Security Act and its regulations by failing to

provide medically necessary transportation for Medicaid recipients. Although the recipients brought suit under Section 1983, Texas did not challenge jurisdiction.

The specific regulation at issue in the *Vowell* case was set forth in 45 C.F.R. § 249.10 which provided that

> (a) State Plan Requirements. A state plan for medical assistance under Title XIX of the Social Security Act must: (5) ... specify that there will be provision for assuring necessary transportation of recipients to and from providers of services and describe the methods that will be used.

45 C.F.R. § 249.10(a)(5).[9] In considering the statutory authority for the regulation, the court noted that "it is clear that the Secretary of HEW has determined the instant regulation to be 'necessary to the efficient administration' of for the obvious (and common sense) reason that 'needy will not be able to obtain necessary and timely medical care if they are without the means of getting to the providers of the service.'" 379 F.Supp. at 150. Holding that this regulation had the full authority of the statute itself, the court found that this requirement unambiguously mandated that states participating in Medicaid provide recipients with transportation above and beyond the emergency ambulance transportation that the Texas plan provided, and that right was enforced under 42 U.S.C. § 1983.

■ Defendants urge this court to re-examine the issues decided by *Smith v. Vowell* because of changes in conditions over the 20 years since that case was decided. The Plaintiffs contend that this court is bound by the holding of *Smith v. Vowell* because it was affirmed by the former Fifth Circuit Court of Appeals, the decisions of which are binding on this court.[10] Plaintiffs are correct. This trial court is not free to disregard that case's holdings. Even though *Smith v. Vowell* does

not address some of the jurisdictional issues raised by the present case, it is still binding precedent. To the extent that *Smith v. Vowell* addresses issues in the present case, this court must follow it. It was affirmed by the Fifth Circuit, and the opinions of the Fifth Circuit from that time period are binding on this court. *See, Harris v. Menendez,* 817 F.2d 737, 739 & n. 4 (11th Cir.1987) *Harris v. Menendez,* 817 F.2d 737, 739 & n. 4 (11th Cir.1987) (holding a summary affirmance of district court to be binding under *Bonner* ).

## D. Other Issues

Defendants offer two other reasons which they contend support their Motion to Dismiss. First, Defendants contend that the fact that the Secretary of Health and Human Services has approved Alabama's Medicaid Plan forecloses this suit challenging it as insufficient. Second, Defendants argue that Plaintiffs must exhaust their administrative remedies prior to filing suit under Section 1983 and that their failure to do so is grounds for dismissal.

■ Neither of these arguments is an appropriate basis for dismissal. Approval of a state plan by the Secretary does not foreclose a plaintiff's ability to challenge the appropriateness of that plan. *See, Haynes Ambulance Service, Inc. v. Alabama,* 36 F.3d 1074, 1077 (11th Cir.1994); *Alabama Hosp. Ass'n v. Beasley,* 702 F.2d 955, 961 (11th Cir.1983). Moreover, the Supreme Court held that plaintiffs need not exhaust their state administrative remedies prior to bringing suit under Section 1983. *See Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). *Accord, Alacare Inc.–North v. Baggiano,* 785 F.2d 963, 967–969 (11th Cir.1986).[11] Nor must a plaintiff exhaust federal administrative remedies prior to bringing suit under Section 1983. *See, e.g., Wilder,* 496 U.S. at

---

9. The Court notes that the content of this regulation is substantially identical to the regulations at issue in this case.

10. In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11. The case on which the Defendants rely, *Wagner v. Sheltz,* 471 F.Supp. 903 (D.Conn.1979), was decided prior to *Patsy* and *Alacare* cases, and to the extent that it is inconsistent with these cases it has no weight in this circuit.

523, 110 S.Ct. at 2524; *Smith v. Vowell,* 379 F.Supp. at 146–47 & n. 26. Both of these arguments were made and rejected in *Smith v. Vowell.* Clearly, these contentions are not appropriate bases for this court to dismiss this case.

## V. CONCLUSION

Defendants also argue that if the Plaintiffs ultimately succeed in compelling provision of non-emergency transportation to and from medical providers, this will have a devastating effect on the already underfunded state Medicaid program. The Defendants surely realize that this argument is more properly addressed to the legislative and executive branches of government, and not to the court. The court's only function is to determine whether federal law, as enacted by congress and implemented by the Secretary of HHS, requires such transportation and, if so, whether the State has failed to meet that requirement. By denying Defendants' Motion to Dismiss, this court holds that the Plaintiffs have a right to have those issues determined in a suit brought under 42 U.S.C. § 1983.

For the reasons stated above, it is the ORDER of this court that Defendants' Motion to Dismiss is DENIED. Defendants are DIRECTED to file their Answer to the Complaint by May 5, 1995.

Additionally, Plaintiffs' Motion for Summary Judgment, filed on March 14, 1995, will be deemed submitted to this Court on May 24, 1995, without oral argument. If either party desires oral argument, such party should so notify the Court and opposing counsel by May 24, 1995. If, after considering the parties' submissions the Court finds oral argument is necessary, a hearing will be scheduled, and the parties will be notified of the date of the hearing. Affidavits, briefs, depositions, or other documents which Defendants wish to file in opposition to said motion shall be filed on or before May 17, 1995. Plaintiffs will have until May 24, 1995 to file any reply they wish to file. If a document, including a deposition, is to be considered on the issue of summary judgment, a party must specifically designate which parts of the document are deemed to be relevant.

Finally, Defendants are directed to file any response to Plaintiffs' Motion for Class Certification on or before May 5, 1995. Plaintiffs shall have until May 12, 1995 to file a reply, at which time the motion will be taken under submission for determination.