Eric L. v. HHS                          CV-91-376-M    02/07/96

UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Eric L.; Kim C.; James K.; Julie W.;
Bruno J.; Jennifer B.; and Jeff D.;
Individually and on Behalf of
All Others Similarly Situated,
     Plaintiffs,

     v.                                     Civil No. 91-376-M

Commissioner of the New Hampshire
Department of Health and Human Services;
and Director of the New Hampshire
Division of Child & Youth Services,
     Defendants.



                            O R D E R


     Plaintiffs in this class action seek declaratory and

injunctive relief under the Fourteenth Amendment to the United

States Constitution and various federal statutes.  On March 31,

1994, the court granted defendants' motion to dismiss plaintiffs'

claims under the Adoption Assistance and Child Welfare Act

("AACWA"), 42 U.S.C. §§620-628, 670-678, and the Child Abuse

Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§5101-5106a.

The court concluded that plaintiffs' claims under the AACWA were

foreclosed by the Supreme Court's decision in Suter v. Artist M.,

503 U.S. 347 (1992).  And, applying the reasoning outlined in

Suter, the court held that plaintiffs also failed to state a claim under CAPTA.

Subsequently, in response to the Suter decision, Congress amended the Social Security Act (of which the AACWA is a part). That amendment provides:

> In an action brought to enforce a provision of this chapter, such provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan.  This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in Suter v. Artist M., 112 S.Ct. 1360 (1992), but not applied in prior Supreme Court decisions respecting such enforceability; provided, however, that this section is not intended to alter the holding in Suter v. Artist M. that section 671(a)(15) of this title is not enforceable in a private right of action.

42 U.S.C. §1320a-2 (the "Suter Amendment").[1]  Federal courts which have interpreted the Suter Amendment have reached divergent conclusions regarding its practical effect on pending cases in which plaintiffs assert private rights of action for alleged violations of the AACWA.  At least two courts have interpreted

---

[1]  As part of the Improving America's Schools Act of 1994, Congress enacted an identical amendment, which is codified at 42 U.S.C. §1320a-10.

the amendment as a Congressional rejection of the Supreme Court's analytical approach in <u>Suter</u>, as well as an affirmative mandate that federal courts employ a pre-<u>Suter</u> analytical approach when determining whether a private right of action exists under specific provisions of the Social Security Act.[2]  <u>See</u> <u>Harris v. James</u>, 883 F.Supp. 1511, 1519 (M.D. Ala. 1995) ("Thus, Congress has rejected the Supreme Court's interpretation in <u>Suter</u> and has mandated that courts continue to apply a pre-<u>Suter</u> approach"); <u>Jeanine B. v. Thompson</u>, 877 F.Supp. 1268, 1283 (E.D. Wisc. 1995) ("the amendment overrules the general theory in <u>Suter</u> that the only private right of action available under a statute requiring a state plan is an action against the state for not having that plan.  Instead, the previous tests of <u>Wilder</u> and <u>Pennhurst</u> apply to the question of whether or not the particulars of a state plan can be enforced by its intended beneficiaries.").

---

[2]  The so-called "pre-<u>Suter</u>" cases addressing the conditions under which a federal statute is deemed to create or not create enforceable rights in individual citizens include <u>Wilder v. Virginia Hospital Ass'n</u>, 496 U.S. 498 (1990); <u>Golden State Transit Corp. v. Los Angeles</u>, 493 U.S. 103 (1989); <u>Wright v. Roanoke Redevelopment and Housing Authority</u>, 479 U.S. 418 (1987); <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 451 U.S. 1 (1981); and <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980).

Other courts, however, have reasoned that because the <u>Suter</u> decision did not deviate from the analytical approach established in <u>Wilder</u>, <u>Golden State</u>, and <u>Pennhurst</u>, <u>Suter</u> represents no departure from established precedent.[3]  Accordingly, those courts have also held that the recent amendment to the Social Security Act did not affect the analytical framework courts must follow in determining whether Congress intended to create a private right of enforcement under specific provisions of the AACWA.  For example, in <u>LaShawn A. v. Barry</u>, 69 F.3d 556 (D.C. Cir. 1995), the Court of Appeals for the District of Columbia concluded:

> Of course, neither the Social Security Act of 1994 nor the identical language of the Improving America's Schools Act of 1994 did anything to supply more precise standards for the Adoption Assistance Act, or to alter the clear statement of the Adoption Assistance Act's

---

[3]  Of course, Justices Blackmun and Stevens would take issue with that conclusion.  Dissenting in <u>Suter</u>, Justice Blackmun (with whom Justice Stevens joined) wrote:

> [T]he court has failed, without explanation, to apply the framework our precedents have consistently deemed applicable; it has sought to support its conclusion by resurrecting arguments decisively rejected less than two years ago in <u>Wilder</u>; and it has contravened 22 years of precedent by suggesting that the existence of other "enforcement mechanisms" precludes §1983 enforcement.  At least for this case, it has changed the rules of the game without offering even minimal justification . . ..

<u>Suter</u>, 503 U.S. 347, 377 (1992) (Blackmun, J., dissenting).

4

non-judicial enforcement provisions; it thus changed none of the factors on which the <u>Suter</u> Court's reasoning depended.

* * *

Thus, unless [section 1320a-2] actually changed part of the test that led to the outcome in <u>Suter</u> (which, as we have said, it did not), courts should find equally vague provisions of similar acts equally unenforceable for the reasons that the Court found convincing in Suter.

<u>Id.</u> at 569-70. <u>See also</u> <u>Baby Neal v. Ridge</u>, No. 90-2343, 1995 WL 728589 at *4 (E.D. Pa. December 7, 1995) (citing <u>LaShawn A.</u>, <u>supra</u>, for the proposition that "the intent of the [<u>Suter</u> Amendment], as expressed by Congress, lacks any significant impact on the Supreme Court's analysis in <u>Suter</u>, and, thus, has no practical effect on future court decisions regarding similar issues.").

To date, however, no federal court has considered the constitutionality of the <u>Suter</u> Amendment.[4] If the <u>Suter</u> decision did establish an analytical framework different from the prior <u>Wilder-Golden State</u> framework, and if the <u>Suter</u> Amendment does,

---

[4] Although the constitutionality of the amendment was apparently raised in <u>LaShawn A.</u>, <u>supra</u>, the court concluded that it did not need to address the issue in order to resolve the questions presented on appeal. <u>Id.</u> at 568.

as it purports to do, nullify the <u>Suter</u> analysis in substantial part, by in effect vetoing it in favor of the prior <u>Wilder-Golden State</u> approach, then it would seem that a very real issue of constitutionality arises. That is, whether, in enacting the <u>Suter</u> Amendment, Congress impermissibly intruded upon the separate judicial power to interpret legislation. Stated somewhat differently, does the <u>Suter</u> Amendment actually change statutory law (as Congress is plainly authorized to do), <u>see e.g.</u>, <u>Robertson v. Seattle Audubon Society</u>, 503 U.S. 429, 438 (1992), or does the amendment merely seek to "prescribe rules of decision to the Judicial Department of the government in cases pending before it," <u>United States v. Klein</u>, 80 U.S. 128, 146 (1871), which Congress may not constitutionally do?

Under the division of power established by the United States Constitution, the legislative branch writes the law, while the judicial branch interprets and applies the law. <u>See, e.g.</u>, <u>Marbury v. Madison</u>, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule."). The Supreme Court's holding in <u>Klein</u>, <u>supra</u>, reaffirmed the concept of

6

separation of powers, and clarified the principles which preclude Congress from usurping the adjudicative and interpretative functions assigned to the judiciary. However, Congress's ability to repeal or amend a law, and to make such amendments applicable to pending cases remains intact. See, e.g., Plaut v. Spendthrift Farm, Inc., 115 S.Ct. 1447, 1452 (1995) ("[I]n United States v. Klein, . . . we refused to give effect to a statute that was said `to prescribe rules of decision to the Judicial Department of the government in cases pending before it.' Whatever the precise scope of Klein, however, later decisions have made clear that its prohibition does not take hold when Congress `amends applicable law.'") (citation omitted); Axel Johnson, Inc. v. Arthur Anderson & Co., 6 F.3d 78, 81 (2d Cir. 1993) ("The conceptual line between a valid legislative change in law and an invalid legislative act of adjudication is often difficult to draw. . . . The rule of Klein precludes Congress from usurping the adjudicative function assigned to the federal courts under Article III. However, Klein does not preclude Congress from changing the law applicable to pending cases.").

Perhaps for understandable political reasons, the Suter Amendment to the Social Security Act does not attempt to plainly

7

state whether Congress did or did not intend to create a private right of action to enforce the AACWA.  Instead, Congress expressed its dissatisfaction with the method employed by the Supreme Court in <u>Suter</u> to determine Congressional intent on that point, and seemingly mandated the use of an alternate, pre-<u>Suter</u> methodology by which courts must divine its intent.  The <u>Suter</u> Amendment at least suggests that by following the analytical framework established in the pre-<u>Suter</u> line of cases, courts will more accurately determine that which Congress has been unwilling to state with clarity: i.e. whether it did or did not intend to create a private right of action.

The questions here, then, are reasonably straightforward: Of what effect is the <u>Suter</u> Amendment?  If the <u>Suter</u> Amendment purports to, in effect, veto the analytical approach to statutory interpretation mandated by the Supreme Court, does it unconstitutionally interfere with the interpretative power assigned by the Constitution to the judiciary?  That is to say, has Congress attempted to "direct" judicial interpretation of legislation in a manner inconsistent with binding Supreme Court precedent, <u>without</u> having amended the underlying legislation?  Just as an inventor may "design around" a patent in the context

8

of patent law, Congress may "legislate around" or override a Supreme Court decision in some circumstances by amending or repealing a law.  See generally, William Eskridge, Overriding Supreme Court Statutory Interpretation Decisions, 101 Yale L.J. 331 (1991).  The separation of powers doctrine and a long line of Supreme Court decisions suggest, however, that Congress may not simply instruct lower federal courts or the Supreme Court itself to ignore Supreme Court precedent.

## Conclusion

Plaintiffs' motion for reconsideration (document no. 50) is granted in part and denied in part.  The court will reconsider its order dated March 31, 1994, in light of the Suter Amendment. As an initial matter, however, the parties are directed to file briefs on or before April 15, 1996,  addressing the following issues:

> 1.  Does the Suter Amendment substantively alter the analytical framework courts must employ in determining whether plaintiffs have a private right of action for alleged violations of the Social Security Act, or, as the Court of Appeals for the District of Columbia has held, does it "change[] none of the factors on which the Suter Court's reasoning depended" and, thus, have "no effect on the interpretative issues raised by

the Adoption Assistance Act." <u>LaShawn A.</u>, 69
F.3d at 569-570.

2.  Is the <u>Suter</u> Amendment a legitimate
    modification of prior law or is it an
    impermissible prescription of rules of
    decision to the judicial branch, in violation
    of the separation of powers doctrine?

After counsel (and the United States Attorney General, if she so
chooses) have submitted their briefs on these issues, the court
will determine whether plaintiffs are entitled to reinstatement
of their claims under the AACWA and/or CAPTA.  Certification of
the constitutional question will be forwarded to the Attorney
General.  28 U.S.C. §2403(a).


    SO ORDERED.


                                   _____
                                   Steven J. McAuliffe
                                   United States District Judge

February 7, 1996

cc:  Bruce E. Friedman, Esq.
     Ronald K. Lospennato, Esq.
     Daniel J. Mullen, Esq.
     Erica U. Bodwell, Esq.
     Rory Fitzpatrick, Esq.
     United States Attorney General
     Gretchen L. Witt, Esq.